CITY OF EVANSVILLE and Another *v.* PFISTERER and Others.

CITY.—*Street Improvement.*—*Estoppel.*—Where an owner of property in a city sees a contractor go on and make a street improvement adjoining said property,

under a contract with the city, and makes no objection while the work is being done, he cannot, after the work is completed and accepted by the city as having been done according to the contract, enjoin the collection of the entire assessments made for such improvement, on the ground that the materials used and the work done were not strictly in accordance with the contract; in such case, a complaint for an injunction must show a tender, by the property owner to the contractor, of the value of the improvement.

APPEAL from the Vanderburgh Circuit Court.

PETTIT, C. J.—This was a complaint by the appellees against the appellants, to enjoin the sale of sundry lots in the city of Evansville, for the payment of assessments made by the city authorities for street improvements.

The complaint alleges, that appellant Gavisk, the city collector, is about to sell sundry lots mentioned in the complaint, which are owned by the plaintiffs, severally and respectively, and enumerates the several lots owned by each of the plaintiffs, and shows that each of the plaintiffs is the owner in severalty of one or more lots mentioned, and that some of said lots front or abut upon Front street in said city, some of them upon High street, some on Fifth avenue, and others upon Fulton avenue; all within the corporate limits of said city; that in 1867, the common council passed an ordinance, fixing rules and specifications by which contractors were to be governed in the improvement of streets, of which a copy is made an exhibit to the complaint, and which, among other things, provides: 1. That the street is to be brought to the proper grade and shape under the direction of the mayor and surveyor. 2. That where streets are paved with gravel, screened river gravel shall be used, to be of the average depth of twelve inches, with a covering of mould of two inches. 3. Samples of the quality of the material to be used are to be deposited by the bidder. 4. The work to be done in the most approved manner, and all material to be of the best kind.

The complaint further alleges, that pretending that said lots described in the complaint are liable to be sold for the payment of certain assessments for improvements, made by one Lowry, under a contract, which is set out as an exhibit to the

complaint, the defendant, Gavisk, as city collector, has adver-
tised for sale at public aution, said several lots, and will, unless
restrained, sell the same for the satisfaction of said assess-
ments.

The advertisement is also made an exhibit to the complaint,
and contains the names of the plaintiffs, with a description
of the lots mentioned in the complaint, with the sum assessed
to each, and a notice that the same will be sold for the pay-
ment of the respective sums on a given day.

The contracts referred to are alike, except as to locality,
and all bind the contractor to make the improvements upon
the several streets according to the plans and specifications
on file in the city clerk's office, and under the direction of the
mayor and city surveyor, or such committee as the common
council of the city may appoint for the purpose. The speci-
fications are made part of the contract, and part of the exhibit,
and provide that the grading is to be done by the city to the
proper form and depth, and under the direction of the city
surveyor; in other respects these specifications are in exact
compliance with the ordinance above referred to.

The complaint then alleges, that the proceedings of the
common council, under which the assessments were made,
and the payment thereon attempted to be enforced, are illegal
and void:

1. Because Lowry, the contractor, without any authority,
changed the grade of the streets upon which the improve-
ments are made, and, under the pretense of performing his
contract, placed on said streets a mixture of sand and gravel,
in the proportion of one-fourth of sand to three-fourths of
gravel, and placed on the same some kind of clay, not mould,
but did not place on either of said streets the quantity of
screened gravel specified in said contracts, and the shape of
the surface of said streets was fixed by said Lowry, or some
other person, and not by said common council.

2. That said pretended assessment and the alleged contract
with said Lowry are based upon an order of said common

council, passed September 7th, 1868, and which is made an exhibit to the complaint.

The order referred to reads as follows:

"MONDAY, September 7th, 1868.

"*Ordered,* That the clerk advertise for sealed proposals until the fifth day of October, 1868, for graveling on Front street, from the east side of Pigeon creek to the east side of Sixth avenue, thence parallel to the boundary line of Front street to the east side of Fulton avenue; also, on Fifth avenue from Front street up to the north line of Second street, thence along Second street to the eastern boundary of Lamasco; Fulton avenue from Front street to north side of Second street; and High street from the western boundary of the Fourth Enlargement to the west side of Leet street."

And it is alleged that the same is illegal and void in this: that it is not shown that three-fourths of all the members of the common council concurred in ordering and requiring said improvements upon said streets, nor does it show the manner in which such improvements should be paid for, as required by the thirty-eighth section of the charter of said city.

3. That the mayor and city surveyor did not, within five days of the making of said contract, make to the common council a report in writing, in accordance with the second section of the ordinance on this subject (Ordinances, page 20); nor did they make any report in writing within the time required by law, and by reason of said failure to make said report the plaintiffs were prevented from executing the written undertakings mentioned in sections four and five of said ordinances, and thereby they lost eight per cent. upon the amount of said assessments.

Prayer for an injunction.

The defendants moved the court to strike out all the names of the plaintiffs, and all the allegations in the complaint except the names of the owners of lots on High street, and those allegations relative to the improvement on High street, for irrelevancy and impertinence; but the motion was overruled, and the defendants excepted.

The defendants then filed a demurrer to the complaint, assigning: 1. The absence of sufficient facts. 2. A misjoinder of causes of action. 3. A defect of parties plaintiffs, in this: that several parties plaintiffs were improperly united.

But the court overruled the demurrer, and the defendants excepted.

The defendants then filed an answer in two paragraphs. The first paragraph admits that the order of the common council directing the assessment and which was the commencement of the proceedings referred to in the complaint was, and is, informal, but alleges that said informality arose from a clerical error, which having been discovered, said order was, by a resolution and order, duly entered on the first day of November, 1868, and before the ratification of the contract with said Lowry and the approval of his bond, duly corrected, and said improvement of said streets duly authorized according to the requirements of the charter and ordinances of said city, a copy of the curative or *nunc pro tunc* order is made an exhibit to this paragraph, and is as follows :

It shows, by name, the presence of eight councilmen, and recites that on the 7th day of September, 1868, it was by the common council unanimously ordered, determined, and required that the several streets, describing them as described in the complaint, be improved, graded, graveled and guttered, according to the plans and specifications theretofore adopted for the making of like improvements; that thereupon, by the unanimous vote of all the councilmen then present, being a quorum, and more than three-quarters of the whole number, the council did order the city clerk to advertise for proposals for making said improvement, but by a clerical omission in making up the minutes, said orders were not correctly and fully entered. It further recites that in pursuance of said orders, so informally entered, the contract for making said improvements was, in accordance with the ordinances of said city, duly let to Jacob S. Lowry for the price mentioned in the contract and specifications mentioned in the complaint. The order then proceeds : " Now, therefore, to confirm the action

of the common council so ordering and requiring said improvements, and to correct said imperfect entries so made in said minutes, it is now here ordered that the several streets (describing them as in the contract set out) be improved by grading, guttering and graveling the same in the manner indicated by the plans, drawings and specifications prepared by the city surveyor, and now on file in the city clerk's office, and that the order of the council awarding said improvement to Jacob S. Lowry, be, and the same is hereby ratified and confirmed, and the question being put, shall the order be adopted? stood as follows: Ayes,—Blemker, Steel, Stockfleth, Scriber, Reitz, Kolle, Rœlker, and Jones. Ayes, 8; Noes, o."

This paragraph further alleges, that immediately after the entry of the last mentined order, and the adoption of the contract with Lowry, to wit, on the same day, the mayor and city surveyor did report to said common council the apportionment mentioned in the complaint, in accordance with the provisions of the third section of the city ordinances, of which a copy is filed, and said common council did, then and there assess and charge the expense so apportioned to the several lots and parts of lots fronting upon the several streets mentioned, according to the second section of the same ordinance, a copy of which is filed.

This paragraph of the answer further denies that Lowry changed the grade as charged in the complaint, but alleges, that if changed, it was done by the city surveyor, by whose plans, and under whose supervision, under the direction of said common council, said work was done; and that said contract was completed to the acceptance of the common council, in all respects according to the provisions of the sixth section of said ordinance, of which a copy is filed, and said plaintiffs made no objection until said improvements had been made, accepted, and paid for.

The second paragraph of the answer denies that Lowry changed the grade, alleges that the improvement was made in conformity with the grade fixed by the city authorities, and in strict compliance with the specifications set out in the

complaint and the contract with Lowry, and that the work was performed under the superintendence, inspection, and direction of the city surveyor and a committee of the common council. This paragraph, also, admits the irregularity of the order, and alleges the correction by the *nunc pro tunc* order, as in the first paragraph, referring to the same exhibit; and alleges the making of the report by the mayor and surveyor as in the first paragraph, and that the same was entered on the minutes of the council, referring to the same ordinance referred to in the first paragraph. It further states that the common council, on the same day, by unanimous order assessed the improvements so ordered upon the several lots and parts of lots fronting on or adjoining said several streets, respectively, in strict accordance with said charter and ordinances, and thereupon said assessment was duly recorded and remains on record in the office of the city clerk; whereupon the mayor of said city tendered each of said plaintiffs a written undertaking for the payment of said several sums so assessed, in all respects in accordance with the provisions of said ordinance, but they, and each of them, refused to execute the same.

The ordinance referred to in the answer is, in substance, as follows:

The first section provides, that when the common council propose to require an improvement to be made, an order designating the improvement shall be passed, and thereupon the clerk shall advertise (directing specifically the mode) for proposals for making the improvement. It also directs the mode of letting the work.

Section two provides, that, in all cases, unless it is otherwise ordered, improvements of streets shall be assessed and charged against the lots and parts of lots adjoining the street improved, equally per front foot.

Section three provides, that, within five days of the letting of any contract for improvement, the mayor and city surveyor shall make a report apportioning the cost among the lots adjoining or abutting upon the street improved, accord-

ing to the principle of taxation established by the second section, and points out in detail what the report shall contain, and that after the same is approved by the council it shall be recorded by the clerk.

Section four provides, that at any time within three days after the approval of the report, any owner of real estate shall have the privilege of giving, to the acceptance of the mayor, a written undertaking, with security, to pay his assessment. The same is to be payable to the contractor in the mode pointed out, and the contractor is required to accept these contracts in satisfaction for so much money, and the mayor shall take the contractors receipt for the amount as a payment, when he delivers over such undertaking to the contractor.   And in case the property holder gives his undertaking and pays it promptly, he is entitled to a drawback of eight per cent. on the amount of his assessment.

Section six provides, that as soon as the contractor shall have completed his contract, to the acceptance of the council, the mayor shall make a statement or report to the council, showing what real estate owners have given undertakings, and what undertakings have been given to the contractor, with the amount of each, and the lot for which it was given; and thereupon the council shall issue a separate precept against each piece of property for the sum assessed against the same, unless the same shall have been paid, either by an undertaking or in cash.

A demurrer was sustained to each paragraph of the answer, and the defendants excepted; and the defendants declining to answer further, the court rendered a final decree against the defendants, enjoining the collection of the assessment and for costs, and the defendants excepted and prayed an appeal, and now assign for error:

First, the overruling of the motion to strike out part of the complaint; second, the overruling of the demurrer to the complaint; third, the sustaining of the demurrer to the answer; fourth, the rendition of the final decree.

The motion to strike out parts of the complaint was over-

ruled and excepted to; the appellants then filed their demurrer for the causes above shown, which was overruled and excepted to. It is not necessary for us ·to enter into a discussion as to the correctness of these rulings, so far as they apply to the question of parties to the suit, for all errors in them on that point are waived by the brief of the appellants; but we intimate (not wishing to be bound by it), that the demurrer was well taken, and ought to have been sustained. 2 G. & H. 47, sec. 19, and the authorities there cited in the notes. The city of Evansville exists by a special charter, and not under the general law of the State for the organization of cities, and the sixth section of the charter is as follows:

"Whenever the owners of lots or parts of lots shall desire to have any improvements or repairs made, in or upon any street or alley, or part of street or alley, in front or rear of, or adjoining such lots or parts of lots, or grading or paving, graveling, curbing, guttering, or in· any other way, and the owners of five-eigths of the whole number of feet of ground on each side of the street or alley, or part of the street or alley proposed to be improved, shall, by themselves or their agents, express their desire, by petition to the common council, stating in each petition, distinctly and plainly, the improvement or repairs desired to be made, it shall be the duty of the common council to cause such improvements or repairs to be made in the best and most economical manner, and the expense thereof shall be assessed and charged against all lots and parts of lots fronting on, or adjoining the street or ·part of street or alley, or part of alley so improved or repaired as aforesaid, equally per front foot, or according to the value of such lots or parts of lots; and in order that it may, at all times, be seen whether the subscribers to such petition represent the requisite number of feet, the clerk shall enter upon the record of the minutes of the proceedings of the common council the petition upon which any such improvements or repairs are ordered to be made, stating on the record the names of the petitioners, and the number of feet

represented by each; and the common council may provide, by general ordinance, for the collection of the cost and expenses of any such repairs and improvements, and provide, also, by such ordinance, for the sale of the fee simple, or any other estate, in any lot or part of lot on which any such expenses remain unpaid, and for the conveyance of the lot or part of lot, or the estate therein, so sold to the purchaser, and such sale and conveyance shall vest a good and indefeasible title in the purchaser to the estate or interest so sold. Public notice of the time and place of every such sale shall be given by publication in a newspaper printed and published in the city, at least two weeks successively, next before the sale; *Provided*, That the expenses of making such improvements or repairs shall not be assessed on lots or parts of lots fronting on the street or alley improved or repaired, according to the value of such lots or parts of lots, unless three-fourths of all the councilmen shall concur in ordering the same to be so assessed, nor shall the improvement on any lot or part of lot be considered in making any such *ad valorem* assessment; *And provided, also*, That the common council, with the concurrence of three-fourths of all the members thereof, may order and require any and all such improvements and repairs of streets and alleys to be made without petition, and either charge and cause any and all part of the expenses thereof to be collected as above in this section provided, or cause such expenses, or part thereof, to be paid out of the general revenue of the city; *And provided, also*, That the word 'street' or 'streets,' wherever the same is used in this section, shall be construed to include sidewalks."

The real question for us to determine in this case is, can a property owner in a city see a contractor go on and make improvements in front of his property, under a contract with the city, making no objection while the work is being done, and after the work is done and accepted by the city as having been done according to the contract, enjoin the collection of the proper expenses of such improvement, by alleging that the materials used and the work done were not *strictly* in ac-

cordance with the contract? We think he cannot. The first rule of equity is, "that he who seeks equity must do equity;" and he who was benefited by the work should have tendered the value of the improvement to the contractor before he brought a suit to enjoin the payment of the whole expense of the work. There is no equity in the complaint, and no right is shown to have an injunction. *Cox* v. *Clift*, 2 N. Y. 118; *The Mayor, &c.,* v. *Meserole*, 26 Wend. 131; *Ward* v. *Dewey*, 16 N. Y. 519; *Heywood* v. *The City of Buffalo*, 14 N. Y. 534; *The Board of Com'rs, &c.,* v. *Silvers*, 22 Ind. 491; *Hellenkamp* v. *The City of Lafayette*, 30 Ind. 192; *Motz* v. *The City of Detroit*, 18 Mich. 495.

The demurrer to the complaint, for want of sufficient facts to constitute a cause of action, ought to have been sustained.

Judgment reversed, at the costs of the appellees; cause remanded ·for further proceedings not inconsistent with this opinion.

*A. Iglehart* and *C. Denby,* for appellants.