IN SPECIAL TERM, 1871.    7

Williams and Another *v.* Little White Lick Gravel Road Company.

# IN SPECIAL TERM.

## JOSEPH WILLIAMS and GEORGE W. STOUT *v.* THE LITTLE WHITE LICK GRAVEL ROAD COMPANY and FRANZ ERDELMEYER, County Treasurer.

Before NEWCOMB, Judge. On a motion for an Injunction to restrain the collection of assessment made for construction of Gravel Road.

### *Appraisers—Majority may act.*

Where one of three appraisers appointed to assess the benefits accruing to the owners of land, by the construction of a gravel road, fails to accept his appointment as such, his failure or refusal does not disqualify the remaining two from acting and making such assessments, which are valid.

### *Assessment—When valid—Assessor—Vacancy, how filled.*

An assessment by a majority of the viewers is as effectual as if made by all of them. The appointment of a Special Assessor to fill a vacancy is discretionary with the Commissioners.

*State Property—Not subject to assessment for local improvement.*

*State Property—Sale of, by County Treasurer, unauthorized.*

Though the statute requires that the Assessor shall "proceed to view all the lands within one and one-half miles of each of such proposed roads, or either end of the same," * * "to make a list of said lands, and assess the amount of benefits that will result to each tract." * *

*Held:* That notwithstanding the general terms of the act, land belonging to the State was not intended to be subjected to assessment for the benefit of a local improvement, and that the act itself is incapable of enforcement against State property.

*Held:* That the County Treasurer can not seize and sell the property of the State in the absence of any statute authorizing such a proceeding.

### *Laches—Remedy for relief, when lost.*

If a party against whom such an assessment has been made, knowing his rights, does not promptly seek his remedy, but allows the company to incur material expenses, and to enter into engagements difficult to be discharged, he will lose his right to an interposition of equity.

Williams and Another *v.* Little White Lick Gravel Road Company.

## *Injunction—Who entitled to.*

A party asking for an injunction must show some wrong about to be done him. He can not invoke the aid of equity by showing damage to one not a party to the proceedings.

*Dye & Harris*, for plaintiffs.

*Taylors & Duncans*, for defendants.

The plaintiffs pray an injunction against the collection of an assessment on their lands for the benefit of the Gravel Road Company, defendant, under the act of May 14, 1869.

*Section* 1, of that Act, provides that a gravel road company, having a valid and solvent subscription of at least three-fifths of the estimated cost of the construction of its road, &c., may petition the Board of County Commissioners of the proper County to have assessed the amount of benefits to each tract of land within one and one-half miles of such road, on either side thereof, and within a like distance of either end thereof.

*Section* 2, makes it the duty of the Commissioners to appoint three freeholders of the County, one from each Commissioner's district, "who shall be termed assessors of benefits to lands under this law," and whose duty it is made, upon receiving notice from the County Auditor, to make all assessments under the act; " *Provided*, that if either of the assessors should be of kin to the owner of any such land, or should be interested in any such assessment, the County Commissioners *may* appoint a disinterested freeholder of his district to act in his stead ; or if no such appointment shall have been made, it shall then be the duty of the two disinterested appraisers to make said assessment."

In this case, Samuel Rumford, the substituted assessor, was notified of his appointment, and of the order of the Commissioners to make the assessment along defendant's road, but he failed to appear, or to take the oath prescribed in the third section of the Act, and the remaining assessors

proceeded to view the lands and assess the benefits accruing to the owners from the construction of the road.

The plaintiffs claim that the assessment is void because made by two only of the three assessors appointed.

The statute makes it discretionary with the Commissioners to appoint a special assessor in case one of the three regular assessors is disqualified to act. Having done so, did his failure to accept disqualify the other two from making the assessment? I think not. His non-acceptance left the place vacant, and the case then stood as if the discretion to appoint the special assessor had not been exercised.

But if such result did not follow from the failure of Rumford to accept and qualify, the other appraisers were competent to act, by virtue of the second clause of Sec. 1, of the Act in relation to the construction of statutes, approved June 18, 1852, which provides that: "Words importing joint authority to three or more persons shall be construed as authority to a majority of such persons, unless otherwise declared in the act giving such authority." 2 *G. & H.*, 337. The meaning of this section is that a majority may act, unless the law conferring the authority expressly, or by necessary implication, requires the concurrence of all. In *Piper* v. *The Connersville, &c., Turnpike Company*, 12 Ind., 400, the Supreme Court held that the action of a majority of the viewers appointed to assess the damages of a land owner, in consequence of the construction of a turnpike through his premises, was valid.

The statute governing that case required the Circuit Court to appoint three disinterested viewers to assess the damages of the owners of the land, whose duty it should be to report to the Court the amount of damages sustained, if any. There was no proviso in the act under which they were appointed, that less than the whole number might act, but the Supreme Court held that by the general statute of 1852, above cited, an assessment by a majority of the viewers was

as effectual as if made by all of them; and the same point was similarly decided in the *Cicero Hygenie Draining Co.* v. *Craighead*, 28 Ind., 274. These cases settle the question raised here, against the plaintiffs.

The complaint further alleges, that the assessment was void because certain lands of one Cossell were so imperfectly described in the list, and assessment, as to amount to no assessment at all. The description given is, "Cossell, Daniel, pt. in s w ¼ sec. 6, township 15, range 3 east, 12 acres, benefitted $27.00."

The defendants answer, that Cossell has fully approved of said assessment by paying the first installment of one-third, which was placed on the proper tax duplicate of Marion County for the year 1869; that he is making no complaint of said assessment, but is satisfied therewith.

I am of opinion that the demurrer to this answer should be overruled. The description of this piece of land is certainly very indefinite, but the case is not to be treated as if it had been omitted from the list entirely. Cossell might perhaps successfully resist a suit on a tax title based on the sale of his land on such a defective description; but if he is satisfied, and is paying his assessments as they fall due, I see no equitable ground on which the plaintiffs can complain of it, or any right on their part to make an objection for him that he declines to make for himself. The ground on which an injunction may be granted is, that some wrong is about to be done to the party asking the injunction. It is an appeal to equity to protect the interests, or to redress the wrongs of the complainant, and not of a stranger to the suit.

The complainant further alleges that the assessment of benefits, &c., was and is void because certain lands were omitted entirely in the list and assessment, that lay within one and one-half miles of defendants road. As to 100 acres of said lands, defendants answer that they were the property of the State of Indiana, being the same lands on which the

Hospital for the Insane has been established and is maintained. To this answer the plaintiffs demur.

The language of the statute is that the assessors shall "proceed to view all the lands within one and one-half miles of each of such proposed roads, or either end of the same, within their county; to make a list of said lands and assess the amount of benefit that will result to each *i* tract from the proper construction and maintenance of the proposed road, &c." This provision is, by itself, broad enough to include lands of the State, but it is clear to my mind that notwithstanding the general terms of the act, land belonging to the State was not intended to be subjected to assessment for the benefit of a local work, and that the act itself is incapable of enforcement against State property.

The property of the State is by law exempt from taxation, (Acts 1861, page 154). But the gravel road law of 1869, Section 4, provides that the assessments made thereunder shall be a lien upon the land assessed with benefits, and that the assessment shall be collected by the County Treasurer, at the time, and in the manner he collects other taxes; and for this purpose the County Auditor is directed to put upon the tax duplicate the amount assessed each year upon the several tracts of land so found to be benefitted by the construction of the road.

The process to be pursued by the Treasurer, in case the assessments are not paid within the prescribed time, is to levy on the personal property of the delinquent owner, as in other cases of unpaid taxes; or in default of personal property, then to sell the lands assessed; but a County Treasurer can not sieze, and sell the property of the State in the absence of a statute directly authorizing such proceeding, and there is no such statute.

But there is another reason equally conclusive against the theory that the lands of the State should have been assessed. The 6th section of the Act makes the parties who have been

assessed for benefits, stockholders in the road, and on payment of their assessments, certificates of stock are to be issued to them for the amount paid. If the lands of the State can be assessed, the State, on payment of the assessment become, *ipso facto*, a stockholder in the turnpike for the benefit of which her property has been so assessed. But she can not be such stockholder, because the Constitution expressly declares that the State shall not become a stockholder in any corporation, or association. Sec. 12, Art. XI.

This Act, therefore, must be construed as if it contained a proviso that no lands owned by the State should be assessed on account of benefits supposed to result from the construction of the road.

The defendants, for answer to the whole complaint, and by way of estoppel, say, that after said assessments were made, with a full knowledge thereof, and of all the alleged defects in the assessment as set forth in their complaint, and of which defects the Gravel Road Company had no notice or knowledge, the plaintiffs stood by and saw the company expend several thousand dollars in the construction of its road, through and beyond the farms of plaintiffs; that on the faith of said assessments the company entered into contracts for construction that can not be met otherwise than by the means to be raised through said assessments; that plaintiffs knowing, &c., sought and obtained consent of the company to work out, on said road, the assessment of 1869 charged against their lands, and used the receipts of the company for the amount of their work on the road in discharge of said assessment on the County Treasurer's duplicate, and that they had made no complaint of the assessment, nor disputed its validity, until the filing of their complaint in this Court, March 6, 1871.

If for any cause the assessment in question is void, the acquiescence of plaintiffs in it would not make it valid; but their laches in not promptly seeking a remedy by injunction

furnishes a strong reason why that remedy should not be granted them under the. circumstances set forth in this answer. In *Greenshalgh* v. *Manchester and Birmingham R. W. Co.*, it was held " that if a party is cognizant of his right, and does not take those steps to assert it which are open to him, before he has allowed the adversary to incur material expenses, or to enter into engagements difficult to be discharged, he will lose his right to the interposition of equity " 3 M. & C., 784, 799 ; 2 Eden on Injunction, pages 372, 374, notes.

Applying this principle to the case in hand, the injunction asked should be denied, leaving the plaintiffs to such means of defense against the assessment as they may find outside of the *equitable* jurisdiction of the Court.

The demurrers to the several paragraphs of the answer are overruled.

NOTE. Final judgment was rendered on demurrer in accordance with the foregoing opinion from which no appeal was taken.—REP.

See 33 *Ind.*, 317, 325 ; 34 *Ind.*, 36. See also 3 *G. & H.*, 291, note 1. "If a party is guilty of *laches*, or unreasonable delay in the enforcement of his rights, he thereby forfeits his claims to equitable relief—more especially where a party, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by, and suffers other parties to incur expenses, and enter into engagements and contracts of a burdensome character." *Hilliard on Injunctions*, 43. See also 10 *Cushing*, 253 ; 1 *Grant*, 412 ; 5 *Jones Eq.*, 323 ; 11 *Gray*, 359, and Binney's case, 2 *Bland*, 99 ; Kerr's Injunction in Equity, 202, 210, 628.

Where Commissioners have awarded the owner of land an amount measurably below its value, the corporation for which they are acting may be restrained from entering upon and taking possession of such land. 29 *Bar C.*, 396.

Municipal corporators and tax-payers, unless individually injured, can not enjoin a public wrong. 4 *Kernan*, 356, 506.

An injunction lies against taking land till security is given for the value, though the party has not petitioned for damages. 35 *Penn.*, 231.

As a general rule the compensation should precede, or be concurrent in point of time with the taking. See *Sedgwick on Damages*, 662, 667, and authorities cited.