LIEBSTEIN and others *vs.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, and O'CONNOR.

1. When the answer fully denies the equity of the bill, and the affidavits annexed thereto are positive and explicit, and fully sustain the denial, the injunction will be dissolved, unless the court is of opinion that the relief sought may be granted on the final hearing.

Liebstein *v.* Mayor, &c., of Newark.

2. Where, under the provisions of a city charter, the entire cost and expense of street improvements are to be assessed upon the property owners on the line of the street, or part of the street on which the improvements are made, and the work is all completed and accepted, and the contract price therefor all paid, before suit commenced, equity will not restrain the city from assessing the property owners for the cost of a pavement, on the ground that the work had not been done according to the requirements of the contract, and that, in materials and execution, it was so defective as to render the pavement almost useless.

3. A court of equity will not entertain an action for relief against an erroneous or illegal assessment, except where the enforcement of the assessment would lead to a multiplicity of suits, or where it would produce irreparable injury, or where the assessment, on the face of the proceedings, is valid, and extrinsic evidence is required to show its invalidity.

4. That the levy and collection of the assessment might deprive the complainant of his property, is not the irreparable injury contemplated by the exception.

5. Where, under the provisions of a city charter, the corporation, in the making of street improvements, are to be regarded as the agents of the land owners, the latter must bear the consequences of the negligence of their agents.

6. Where, under the provisions of a city charter, the city authorities, in the making of street improvements, are the agents of land owners, and have been guilty of negligence in permitting such improvements to be made in a grossly defective manner, and to the great injury of the land owners, a court of equity will restrain the authorities from paying for the work until the defects shall have been remedied, or will compel a just deduction, in respect of such defects, from the contract price, if it be still unpaid, or from any part of it remaining unpaid, if sufficient for the purpose; and if not sufficient, then so far as it will go. But the application must be made while the court has the power to do justice between the parties, without injustice to others.

7. But if the land owners stand by and permit the city to pay the contractor, they can have no relief against the assessment. Their inaction is a ground of estoppel, and by permitting the city to pay the contract price, they have put it out of the power of the court to afford relief.

8. Where land owners, along the line of a street where improvements have been made, seek, on the score of the negligence of the municipal authorities, in the execution of the contract, to restrain the assessment of of the contract price upon them, and so shift, to the tax payer at large, a part of the burden which the legislature intended should be borne by themselves alone, vigilance as to the work, and prompt recourse to the court, are essential prerequisites to the application.

Liebstein *v.* Mayor, &c., of Newark.

Motion to dissolve injunction. Argued on bill and answer,. and affidavits.

*Mr. W. H. Francis,* for the motion.

*Mr. J. H. Stone* and *Mr. T. N. McCarter,* contra.

THE CHANCELLOR.

On the 1st of September, 1871, the defendant, Thomas. O'Connor, entered into a contract with the defendants, the mayor and common council of the city of Newark, for paving with Telford pavement, and otherwise improving, part of Springfield avenue, in Newark. The complainants are owners of land on that part of the avenue. By the provisions the city charter, the entire cost and expense of the work is to be assessed upon them.

The bill alleges that, at the time of the commencement of this suit, the work was not yet completed, and that, as far as it had progressed, it had not been done according to the requirements of the contract; that both, in materials and execution, it was grossly defective, and that, to such an extent as to render the pavement almost valueless.

The bill prays an injunction to restrain the city from paying the contractor the full contract price for the work, and. from assessing that price upon the complainants, without first making a proper deduction in respect of the defects of the work, and any special damages arising from the defective execution of the contract. It contains no general prayer for relief. Affidavits in support of the allegations of the bill, were appended to it.

On the filing of the bill, an injunction was granted according to the prayer.

The defendants answered. The answer alleges that the work and materials were done and furnished in strict compliance with the contract, except as regards the laying of the gutter stone, in which respect, a method different from that provided for by the contract, was adopted by the contractor,

under the direction of the street commissioner, who, it is alleged, changed the mode for the advantage of the work.

It further states, that the work was all completed prior to the 6th of November, 1872, on which day the final payment was made to the contractor, in full for all the balance due him, and that, when the bill was filed, (May 23d, 1873,) the assessment had been made, though it had not yet been ratified by the common council. The payments made to the contractor, for the work, amounted, in all, to $121,861.59, the whole of which was paid by the city.

The affidavits annexed to the answer are positive and explicit, and fully sustain its material denials and statements. Were I of opinion that the relief sought might, on the final hearing, be granted, I should hesitate, however, to dissolve the injunction before a full investigation of the subject of complaint should have been had.

The theory of the charter, in providing that the whole cost and expense of such improvements shall be assessed upon the owners of the land on the line of the street or avenue on which the work is done, is, that such owners are benefited by the work, to the extent of the entire amount of its cost, and that, therefore, they should pay for it.

The bill seeks no relief against the contractor. It charges no fraud or corruption on the part of the city authorities, but does charge gross negligence. The whole contract price of the work having been paid before the commencement of this suit, the question now is, whether equity will restrain the city from assessing the complainants, on the ground of the negligence charged in the bill against the city authorities. To grant such relief, would be to compel the other tax payers of the city to share the burden imposed by the charter upon the complainants. Should this court restrain the city from levying or collecting the assessment, the loss thus occasioned would fall on the city treasury, and must be borne by the tax payers at large.

It is laid down, as the general rule, that a court of equity will not entertain an action, by the party aggrieved, for relief

against an erroneous or illegal assessment, and that this rule is subject to three exceptions : where the enforcement of the assessment would lead to a multiplicity of suits, or where it would produce irreparable injury, or where the assessment, on the face of the proceedings, is valid, and extrinsic evidence is required to show its invalidity. Whenever a case is made by the pleadings, falling within either of these exceptions, equity will arrest the excessive litigation, prevent the irreparable injury, or remove the cloud upon the title ; but it will not interfere where none of these circumstances exist. *Heywood* v. *City of Buffalo*, 14 *N. Y.* 534, 541 ; *Dows* v. *City of Chicago*, 11 *Wall.* 108, 111.

This case falls within none of those exceptions. It is true that the bill alleges that the complainants will, by the assessment, be subjected to irreparable injury. But how such injury is to arise, does not appear. The levy and collection of the assessment might, indeed, deprive them of their property, but this could work no such injury as to bring the case within the exceptions. If that were a ground for interference in this case, it would be equally so in every case of illegal, erroneous, unjust, or unequal taxation.

The city, in such improvements as that under consideration, must, under the provisions of the charter, be regarded as the agents of the land owners. *McCullough* v. *Mayor of Brooklyn*, 23 *Wendell* 458 ; *Lake* v. *Trustees of Williamsburgh*, 4 *Denio* 520, 523 ; *Bond* v. *Mayor, &c., of Newark* 4 *C. E. Green* 376. See, also, *Harrison* v. *Stickney*, 2 *H. of L. Cas.* 108, 126. And the latter must bear the consequences of the negligence of their agents.

In *State* v. *Mayor, &c., of Jersey City*, 5 *Dutcher* 441, 449, an error to the Supreme Court on judgment on certiorari, in the matter of assessments for building a sewer, the court said: " It is needless to observe, that no misconstruction or malconstruction of the work arising from the incapacity, the honest mistake, or the fraud of the contractor, would invalidate the assessment, or relieve the parties assessed from the obligation to pay it. In this respect, the property owners

assessed under the provisions of this law for the cost of a sewer, must stand on the same footing with parties assessed for taxes for the public benefit. They take the hazard incident to all public improvements, of their being faulty or useless through the incapacity or fraud of public servants. The pretext, that a tax payer shall avoid the payment of his assessments, because the funds are injudiciously applied, is the worst form of repudiation."

Equity, however, will undoubtedly, readily afford relief in such cases as this, when timely application is made to the court; but such application must be made while the court has the power to do justice between the parties, without injustice to others. In such cases, the court will restrain the city authorities from paying for the work until the defects shall have been remedied; or will compel a just deduction, in respect of such defects, from the contract price, if it be still unpaid, or from any part of it remaining unpaid, if sufficient for the purpose; and if not sufficient, then so far as it will go. *Bond* v. *Mayor, &c., of Newark, supra*; *City of Evansville* v. *Pfisterer*, 34 *Ind.* 36. But if the land owners stand by, and permit the city to pay the contractor, they can have no relief against the assessment. *Bond* v. *Mayor, &c., of Newark*; *Lafayette* v. *Fowler*, 34 *Ind.* 140. In such case, their inaction is a ground of estoppel, and by permitting the city to pay the contract price, they have put it out of the power of this court to afford relief. And further, the question, under those circumstances, would simply be, whether they alone should bear the consequences of the neglect of those who must be regarded as their agents.

In the present case, the city has paid the contractor $121,-861.59 in full for the work. The last payment, $38,915.03, made on the final estimate, and after the work had been completed, and had been accepted and approved by the street commissioner, was made on the 6th of November, 1872, more than six months before the bill in this cause was filed. The work appears to have occupied about one year. Its character was such as to admit, very readily, of effectual

inspection, and prompt detection of omissions, or failure to comply with the requirements of the contract.

Apart from the considerations above presented against granting the relief sought by the complainants, it is obvious that equity would, in such cases as this, in fairness to those upon whom, by granting the desired relief, a part of the burden which the legislature intended the land owners alone should bear, would be devolved, require of the latter, vigilance as to the work, and recourse to the court while as yet redress is practicable through the exercise of control over the parties to the contract. Their peculiar relation to the improvement, from their liability to pay for it, and the advantage they are to derive from its execution, would make watchfulness and prompt action not only a duty, but an essential prerequisite in any application for relief, as against the tax payers at large.

The injunction is dissolved, and the bill dismissed, with costs.