## CITY OF LAFAYETTE and Others *v.* FOWLER and Others.

CITY.—*Street Improvement.*— *Change of Grade.*—The common council of a city incorporated under the general act for the incorporation of cities may, by a two-thirds vote, without any petition, order the grade of a street which has been improved, such improvment having been paid for by the owners of the property bordering on such street, and is in good repair, to be changed, and cause the street to be reimproved with such change of gradc, and pay the damages occasioned by the change out of the general revenue of the city, and assess the expense of the reimprovement against the owners of the adjoining property or cause such expense to be paid out of such general revenue.

SAME.—*Extension of Time of Completion.*—The mere extension by the common council of the time within which the contractors are to complete a street improvement will not constitute a ground for enjoining the collection of an assessment for such improvement.

City of Lafayette and Others *v.* Fowler and Others.

SAME.—*Length of Improvement.*—A street in a city incorporated under the general act for the incorporation of cities may be improved by grading, &c., for a greater length than one whole square, or block, under one order and one contract.

SAME.—*Estoppel.*—Where the owner of real estate in a city stands by and sees a street improved adjoining said property, on a contract made under an order of the common council, without attempting by injunction to prevent such improvement, he cannot, after the work is completed or nearly completed, refuse to pay for it.

APPEAL from the Tippecanoe Circuit Court.

DOWNEY, J.—Suit by Fowler, to which the other appellees afterwards became parties, against the city of Lafayette and Feely and Balfe, to enjoin the collection of certain assessments for street improvements, claimed by Feely and Balfe, the contractors.

The street in question had been graded and improved by the authority of the city, in 1859, and the cost of the improvement paid by the owners of the property on the street.

In 1867, the city, in consequence of the annexation of additional territory, extended the street, and besides fixing the grade of the new part of the street, ordered a change in the grade of the part which had been graded and improved in 1859.

After causing an assessment of the benefits and damages to the property affected, and tendering the amount of damages, they let a contract to Feely and Balfe, on the 10th of August, 1868, the cost of such change of grade and improvements to be assessed against the property fronting on the street. After the work was nearly completed, and precepts were about to be issued for the collection of the assessments, this suit was commenced. The appellees, other than Fowler, became parties to the suit by filing petitions containing that request and setting forth the same matters, in substance, as are in the complaint of Fowler. Fowler alleges as grounds for injunctive relief, first, that the change of the grade of the street is in violation of section twenty-seven of the law for the incorporation of cities, because there was no petition for the change of grade, without which, he contends, the

council could not order the change, the act not allowing the cost of such change to be charged against him, but requiring it to be paid by the petitioners. Second, because the improvement ordered extends for more than one whole square between two streets crossing the improved street, to wit, four blocks; and that the city cannot improve more than one square, or block, in length, of a street, on the same order and contract, and that the order and contract in this case was in violation of section sixty-eight of said act. Third, that as the street had been once improved and paid for by the owners of the property bordering thereon, and was in good repair, the city had no power to make this improvement at the expense of said property holders, but that it can only be paid for out of the general fund. Fourth, one of the other complainants alleges a new reason for relief; and that is this: that the city council extended the time within which the contractors were to complete the work; and it is insisted that there should have been an abatement of the amount of the assessments on this account.

With reference to the first point, it must be allowed that if it had to be decided upon section twenty-seven alone, the position of the appellees might be well taken. The section relates to the duties of the civil engineer, and is as follows:

"Sec. 27. The civil engineer shall prepare plans, specifications and estimates, when thereunto directed by the common council, of proposed public improvements, and shall superintend the opening of streets and the preservation of the true lines thereof, and perform all other duties appertaining to his office and directed by the common council; and such engineer shall have exclusive jurisdiction to survey, determine, establish and perpetuate the lines and corners of all lots, blocks, parcels of land and subdivisions thereof within the limits of such city. He shall make a record of all such surveys as the county surveyor is now required to do; and such record, or certified copies thereof, shall have the same force and effect as the record of surveys made by the county surveyor has; and from all such surveys an appeal may be

City of Lafayette and Others v. Fowler and Others.

taken, as provided for appeals from surveys made by the county surveyor: *Provided*, that when the city authorities have once established the grade of any street or alley in the city, such grade shall not be changed until the damages occasioned by such change shall have been assessed and tendered to the parties injured or affected by such change; and such damages shall be collected by the city from the party or parties asking such change of grade, in the manner provided for the collection of street improvements."

That part of section sixty-eight which bears upon this and the other questions is as follows:

"Sec. 68. When the owners of two thirds of the whole line of lots or parts of lots (and measuring only the front line of such lots as belong to persons resident in such city) bordering on any street or alley, consisting of one whole square between any two streets crossing the same, or if the common council deem it expedient, for any reasonable distance upon any square or alley, less than one whole square or block, shall petition the common council to have the sidewalks graded.and paved, or the whole width of the street graded and paved, or for either kind of improvement, or for lighting such street according to the general plan of such improvement in said city, the common council may cause the same to be done, by contracts given to the best bidder, after advertising to receive proposals therefor; and the common council shall have power to compel the owner or owners of a lot, or a part of a lot, on any street or alley, or upon any part of any street or alley, to repair the sidewalks in front of their respective lots or parts of lots; and in case the owner or owners of any lot or part of lot, on any street or alley or any part thereof, fail or refuse to repair the sidewalks in front of their lots, the common council may cause such repairs to be made by the street commissioner, at the cost and expense of the owner or owners of such lot or lots; and the city shall have a lien on such lot or lots for the reimbursement to her of the cost of such improvement; and the common council are hereby invested with full powers to pass

by-laws and ordinances providing how and in what manner the repairs shall be made, and in what manner the same shall be assessed and collected from such owner or owners, and the manner in which the lien of the city for the expense incurred by her may be enforced against the lot or lots of such owner or owners."

Section sixty-eight evidently contemplates a petition to the city council, and the proviso to section twenty-seven also contemplates a case where the property owners initiate the work of improvement by a petition to the common council. If this were the only manner in which changes of grade and improvements of the streets could be brought about, the case would very clearly be with the appellees; but as it is not, we must see what further provision has been made, if any, for cases where there is no petition. The general authority of the city council over the streets is given by section sixty-one of the act. It, or so much thereof as it is necessary to quote, is as follows:

"Sec. 61. The common council shall have exclusive power over the streets, highways, alleys, and bridges, within such city, and may prescribe the height, and manner, and construction of all such bridges, and to lay out, survey, and open new streets and alleys, and straighten, widen, and otherwise alter, those already laid out, and to make repairs thereto, and to construct and establish sidewalks and crossings," &c.

The seventieth section of said act reads as follows:

"Sec. 70. When any such contract shall be made, or shall have been heretofore made, and shall have been in progress of fulfilment, the common council shall have power to cause estimates to be made from time to time, of the amount of work done by the contractors, and to require such amount to be paid to him, deducting a reasonable per centage to secure the completion of the contract, until the whole shall be finished, and to prescribe the time within which the whole shall be completed; and such estimate shall be a lien upon the ground upon which they are assessed, to the same ex-

tent that taxes are a lien, and shall have the same preference over other demands. The common council, with the concurrence of two-thirds of the members thereof, may order or cause any or all of the improvements mentioned in the preceding section, and repairs of any kinds of streets and alleys, to be made in like manner, without such petition, and either charge and cause any or all of the expenses thereof to be assessed and collected, as hereinafter provided when petition is made, or if is deemed just and right by the common council, cause such expenses, or any part thereof, to paid out of the general revenue of the city."

The word "hereinafter" in the last sentence of this section creates a little confusion, since the sections with reference to assessments of the benefits to property which is to be charged with improvements are prior in order to this one. It is quite evident that this section should be read as though the words, *in this act*, were used instead of the word "hereinafter." It seems also that the word "section," where it occurs in this part of the above section, should be in the plural, instead of the singular, as the section immediately preceding this makes no provision as to what improvements may be made, or how they are to be made. And then there is this further consideration with reference to this point, that the word "preceding" does not necessarily mean the next or immediately preceding. Section 68, as well as section 69, precedes section 70.

Section 70, we think, fully authorized the change of grade, without any petition, and authorized the city to pay the damages out of the general fund, and to assess and collect the expenses of the improvement from the owners of the property adjoining the street, or, at their option, to pay the same out of the general revenues of the city. If the construction contended for was correct, then the city could in no case change the grade of a street, except in cases where there was a petition. We think this construction is inadmissible.

The second ground assumed arises upon section 68, or

that part of it above quoted.   As we understand it, the posi-tion is, that if there is a length of street to bc improved, extending for more than one square, it cannot be done by one order and one contract.   No authority for such a con-struction is furnished, and as it is contrary to reason, we cannot adopt the construction.   The language is not per-spicuous.   Perhaps it means that when the owners of two-thirds of the distance of at least one whole square, petition the city council, then the council has no discretion as to whether they will grant the petition or not, but must comply with the request ; but if the distance be less than one whole square, then the council may order the improvement, if they deem it expedient, but are not absolutely bound to do so. We see no advantage to the city or to any person which would result from dividing up the work and letting it out to contractors by the square.

The third position is without authority to sustain it.   The provision in section 70 above quoted authorizes the city to cause the expenses to be collected from the property holders, or to pay them out of the general fund.

There is nothing in the fourth position.   The question of extension of the time within which the work should be com-pleted was a matter between the council and the contractors. The appellees do not show that they were damaged thereby. If it was as they allege, that there should have been an abate-ment of fifty per cent, on account of the extension, they ought not to have been allowed to enjoin the collection of the re-maining fifty per cent.

Another position in this case which is assumed by the appellant is, that the property owners could not stand by and see the improvement made without making any effort, by in-junction, to prevent it, and then, after the work is done, or nearly done, refuse to pay for it.   This rule has been applied by this court in several cases very similar to this one.   *Hel-lenkamp* v. *The City of Lafayette*, 30 Ind. 192; *Palmer* v. *Stumph*, 29 Ind. 329.

The judgment is reversed, with costs, and the cause remanded, with directions to the circuit court to sustain the demurrer to the complaint.

*J. R. Coffroth* and *T. B. Ward*, for appellants.