The Western Paving and Supply Co. *v.* The Citizens' Street Railroad Co.

There is no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed Feb. 3, 1891; petition for a rehearing overruled June 19, 1891.

No. 15,640.

THE WESTERN PAVING AND SUPPLY COMPANY *v.* THE CITIZENS' STREET RAILROAD COMPANY.

STREET RAILWAY.—*Charter.*—*Contract.*—A charter granted by the common council to a street railway company to construct and operate a street railway within the corporate limits of a city, constitutes a contract between such railway company and the city.

SAME.—*Charter, How Construed.*—Such charter is to be strictly construed against the railway company, and it has no doubtful rights under such charter, for where there are doubts they are construed against the grantee and in favor of the city.

SAME.—*Amendatory Ordinance.*—*Consideration.*—An ordinance of the city of Indianapolis, passed in 1864, authorizing the Citizens' Street Railway Company to use the streets of the city for the purpose of constructing and operating a street railway, provided that the company should boulder the space between rails, and pave, boulder or otherwise improve and keep in repair two feet on the outside of each rail. An amendatory ordinance, passed in 1878, provided, instead, that the company should keep the space between the rails, together with all bridges and crossings of gutters, and two feet on the outside of each rail in good repair. Both of these ordinances were accepted by the company. The amendatory ordinance was passed in consideration that the company should unite its two disconnected systems of railway, charge a fare of five cents for transportation to any part of the city, and construct within a given time certain additional lines of railway.

*Held,* that a compliance by the company with the conditions of the ordinance was a sufficient consideration for the amended ordinance, and

The Western Paving and Supply Co. v. The Citizens' Street Railroad Co.

that when it was accepted by the company and its conditions complied with it became a binding contract.

SAME.—*Repairs.* — *Improvements.* — Where an ordinance provides that a street railway company shall keep the space between the rails and a certain space outside each rail in repair, the city can not, by a subsequent ordinance, impose on such company, without its consent, the obligation of paying a proportionate share of the cost where a street occupied by its railway is improved.

SAME.— *Consideration.*—*Parol Evidence.*—An ordinance amending a section of an ordinance which required the Citizens' Street Railway Company to pave between its tracks provided that such company should only be required to keep the space between the rails in good repair. The city by a subsequent ordinance sought to compel the company to pay a part of the cost of street improvements. This ordinance was not accepted by the company. Afterwards the city granted to the Citizens' Street Railroad Company, the purchaser of the street railway, all the rights, privileges and franchises of the Citizens' Street Railway Company in consideration that the former company should assume all the obligations and duties of the latter.

*Held*, that it was not competent to prove by parol that the new company, in consideration of the passage of the ordinance ratifying and approving the sale, accepted the ordinance which sought to make the old company liable for street improvements.

SAME.—*Liability for Assessment.*— *When Property-Owner not Estopped to Deny.*—A street railway company, whose property is not subject to assessment for street improvements, is not estopped to deny its liability for an assessment, because it stands by without objection until the improvement is completed, if it is one which the city has authority to make.

From the Marion Circuit Court.

*A. C. Harris* and *L. Cox*, for appellant.

*H. C. Allen,*·*F. Winter* and *J. B. Elam*, for appellee.

COFFEY, J.—This case was under consideration by the late Judge Mitchell, prior to his death, and, while so considering it, he prepared the following statement, which we adopt :

" On the 18th day of January, 1864, the common council of the city of Indianapolis passed an ordinance authorizing the Citizens' Street Railway Company, which had been duly organized under the general laws for the incorporation of street railways, to use the streets of the city for the purpose

The Western Paving and Supply Co. v. The Citizens' Street Railroad Co.

of constructing and operating thereon a street railway. Among other things it was provided, in the ordinance, that the company should boulder that part of the street it might thereafter occupy lying between the rails of its track, and also that it should pave, boulder, or otherwise improve and keep in repair two feet on the outside of each rail, so as at all times to correspond with the street outside. Pursuant to the above ordinance the street railway system was in part constructed. Subsequently, in the month of April, 1878, the common council and board of aldermen amended so much of the ordinance of 1864 as imposed upon the company the duty of bouldering the part of the street between the rails of its track, and paving, or otherwise improving, as the street might be, a space outside the tracks on either side, and instead thereof provided that 'the said company shall keep the tracks and two feet on the outside of each rail, together with all bridges, and the crossings of all gutters, at all times, in good repair to the satisfaction of the common council.' The company was required to signify its acceptance of the amendment within thirty days, and it is averred that the ordinance, as amended, was duly accepted.

"It appears that afterwards, in April, 1884, an ordinance was duly adopted in which it was provided that when any street upon which there existed a line of railway, was improved from curb to curb, the improvement should be made under contract, as required by law, and that the street railway company should be liable to the contractor for its proportion of the total cost; the proportion to be determined by the city civil engineer according to the method prescribed in the ordinance.

"Nothing appears to indicate that the company accepted or consented to the provisions of this last ordinance.

"Subsequently, in 1888, the property and franchises of the corporation hereinbefore named, were transferred to the Citizens' Street Railroad Company, a new corporation then recently organized. The new company presented to the com-

mon council an ordinance known as the ordinance of April 23, 1888, which was duly adopted, and which is of the tenor following :

' Be it ordained by the common council and board of aldermen of the city of Indianapolis, that the sale and transfer heretofore made by the Citizens' Street Railway Company of Indianapolis, Indiana, of all its property, rights, franchises and privileges in the city of Indianapolis to the Citizens' Street Railroad Company of the city of Indianapolis, its successors and assigns, subject to all the duties, conditions and obligations heretofore imposed and now resting on said railway company, be, and the same is hereby ratified and approved ; and all said rights, privileges and franchises heretofore possessed by said old corporation are granted to and confirmed in said new corporation, its successors and assigns, subject to the same duties and obligations as vested in said old corporation.'

"In 1889 an ordinance was duly passed for the regrading of two squares of Pennsylvania street with asphalt. The contract was duly let to the Western Paving and Supply Company, and the work was done and accepted by the city, the amount estimated as the proportion to be paid by the company, according to the provisions of the ordinance of 1884, being $3,716.28. The railway company denied its liability, whereupon the contractor instituted this suit to recover the amount."

The central position which the street railway company plants itself upon is, that the ordinance passed by the common council of the city of Indianapolis in 1864, and the amendment thereto adopted in 1878, both of which were duly accepted by its predecessor, had the force and effect of a contract which could not be altered or impaired without its consent ; that the old company had never consented to nor accepted the ordinance of 1884 which sought to impose upon it more extended obligations, and that by the ordinance of April 23d, 1888, the new company became subject to the

same duties and obligations that had theretofore been imposed upon the old, no greater and no less, and it was not bound by the ordinance passed in 1884, by which the obligation of paying a proportionate share of the cost of street improvements was sought to be imposed upon the old company.

The vital question to be decided by this court is this : Does the amendatory ordinance of April, 1878, providing that the Citizens' Street Railway Company should keep the space between its tracks and two feet on the outside of each rail, together with all bridges and crossings of gutters at all times in good repair, to the satisfaction of the common council and board of aldermen, and to cause the space between its tracks and two feet on the outside of each rail to conform to the grade of the street on which the same is laid, amount to a contract, based upon a sufficient consideration, the legal effect of which was to release the company from the performance of duties imposed by the ordinance of 1864, to which the appellee succeeded by its purchase from that company ?

Many of the questions governing the rights existing between street railway companies and the cities in which they operate their roads, under charters granted by such cities, seem to be too well settled to 'admit of longer controversy, while many other questions remain in doubt and uncertainty.

It is settled that a charter granted by the common council to a street railway company to construct and operate a street railway within the corporate limits of a city, constitutes a contract between such railway company and the city. *Chicago* v. *Sheldon*, 9 Wallace, 50 ; *Coast-Line Railroad Co.* v. *Mayor, etc.*, 30 Fed. Rep. 646 ; *State, ex rel.*, v. *Corrigan, etc., Street R. W. Co.*, 85 Mo. 263 ; *District of Columbia* v. *Washington, etc., R. R. Co.*, 4 Am. and Eng. R. R. Cases, 161 ; *Farrar* v. *City of St. Louis*, 80 Mo. 379 ; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650 ; *Greenwood* v. *Freight Co.*, 105 U. S. 13 ; *New Jersey* v. *Yard*, 95 U. S. 104.

It is also settled that such charter is to be strictly construed against the railway company, and that it has no doubtful rights under such charter, for where there are doubts they are construed against the grantee and in favor of the city. *Citizens' R. W. Co.* v. *Jones,* 34 Fed. Rep. 579 ; *Mayor, etc.,* v. *Ohio, etc., R. R. Co.,* 26 Pa. St. 355; *Birmingham, etc., R. W. Co.* v. *Birmingham, etc., R. W. Co.,* 79 Ala. 465 ; *West Philadelphia, etc., R. W. Co.* v. *City of Philadelphia,* 10 Phila. 70.

It seems to be settled that a street railway company is bound to keep in repair that portion of the street used by it, even in the absence of a stipulation in its charter requiring it to do so, but the question as to whether it is compelled to improve the street, as ordered by the city, in the absence of a contract to that effect, seems to be in some doubt. It is undoubtedly true that the authorities upon this question are conflicting.

Judge Elliott, in his valuable work on Roads and Streets, after a careful examination of the authorities upon the subject, at page 594, says: "As much as can be safely affirmed in the present state of the decided cases is that the private corporation is bound to repair but is not bound to improve. It is bound to restore but is not bound to change. * * It would not, as we interpret the rule sustained by the weight of authority, be compelled to make the new pavement, but it would be its duty, in making repairs after the new pavement was laid, to make them to correspond to the new pavement."

The conclusion reached by Judge Elliott, as stated above, is fully warranted by the authorities cited in support of the text.

By section 5 of the original charter granted to the Citizens' Street Railway Company and accepted by it, that company contracted with the city of Indianapolis to boulder the streets between the rails, and to pave or otherwise improve the street for a given space outside its rails. If this section was still in force the case would, we think, be free from

difficulty. But if the amendment of 1878 was a valid and binding ordinance, and was accepted by the company, section 5 of the original charter does not now exist, being merged in the amended section. It is to be inferred from the amendment above referred to, that the company under the original charter had constructed, in the city, two systems of railway, one south of the union railway tracks and one north, which were wholly disconnected. The city was desirous of having these two systems connected, and of limiting the fare to be charged for the transportation of passengers to any part of the city to five cents; and, also, that the company should construct, within a given time, certain additional lines of railway named in the ordinance. It is recited in the amended ordinance that it is passed by the common council and board of aldermen in consideration that the company will comply with the desire of the city as above expressed.

A compliance by the company with the conditions expressed in the ordinance was, we think, a sufficient consideration for the amended ordinance, and when it was accepted by the company and its conditions complied with it became a binding contract. The amount of the consideration was a question to be settled by the contracting parties, and is a matter over which the courts, in the absence of fraud, have no control. This amended section 5 provides, as we have seen, that the company shall keep the space between its rails and two feet on the outside of each rail, together with all bridges at the crossing of gutters, at all times in good repair, and omits the provisions contained in the original charter that the company should boulder the space between the rails of the track, and pave or otherwise improve (as the street may be) two feet on the outside of each rail. The contract then, made between the city and the company in 1878, was a contract to repair and not a contract to improve the streets upon which the railway was then, or should thereafter be laid. The question, therefore, arises whether the

city of Indianapolis possessed the power to pass a binding ordinance, in the year 1884, requiring the street railway company to pay for improving the streets occupied by its street railway. The question here presented seems to have been carefully considered, not only by some of the State courts, but by the Supreme Court of the United States.

In the case of *Coast Line Railroad Co.* v. *Mayor, etc., supra*, the question involved was similar to the one now before us.

In that case the city of Savannah had granted to the Coast Line Railroad Company the right to lay a track upon a certain street in the city on conditions prescribed in an ordinance, one of which was as follows : " In the event of paving by the city, of the whole or any part of the streets used by said railroad company, the portion of the track between the rails shall be paved and kept in good order and thorough repair by the company at its own expense and cost." The ordinance was accepted by the company. The Legislature of the State authorized the mayor and aldermen of the city to pave the streets, and by section two of the act granting such authority, it was provided that any street railroad company, having tracks running through the streets of the city, should be required to macadamize or otherwise pave, as the mayor and aldermen should direct, the width of its tracks and three feet on each side of every line of track then in use, or that might thereafter be constructed by such company. Pursuant to the statute, the city passed an ordinance to pave Broughton street, upon which the company had a track, with asphalt, and directed the company to pave, not only between its rails, but for three feet on each side of the rails, and the company refusing to pave otherwise than between its tracks, the city laid the additional pavement and levied upon the property of the company for payment of the expense. The company brought suit for an injunction, upon the ground that the act of the Legislature, under which the city acted, was in violation of the Constitution of the

MAY TERM, 1891.    533

The Western Paving and Supply Co. *v.* The Citizens' Street Railroad Co.

United States, as it impaired the obligation of the contract embodied in the ordinance by which the company had been granted the right to occupy the streets. It was held by the court that the provisions of the ordinance requiring the company to pave and keep in good and thorough repair the portion of the street between the rails of its track, was the limit of the paving to be done by the company, and that the obligation to do this amount of paving was as binding on the city as it was upon the company, and that the act of the Legislature above referred to impaired the obligation of this contract, and under the provisions of section 10, article 1, of the Constitution of the United States, was void.

In the case of *State, ex rel.*, v. *Corrigan, etc., Street R. W. Co., supra,* the ordinance which conferred upon the company the right and privilege of using the streets of the city for a horse railway contained a provision which required the railway company to keep and maintain the space between its rails and for two feet on either side of its track, and all street crossings along its line, in good repair. It was held that under such ordinance the company could not be compelled to reconstruct the street; that the obligation to repair a street is not an obligation to construct thereon a new pavement. It was further held that the city could not, by a subsequent ordinance, impose on the company, without its consent, the additional obligation to pave the street; and that a subsequent ordinance attempting to impose such additional burden could not be sustained on the ground that it was the proper exercise of the police power of the city.

In the case of *Chicago* v. *Sheldon, supra,* the city of Chicago, by proper ordinance, granted to the North Chicago City Railway Company a charter to construct its railway upon certain streets in the city of Chicago, which charter contained the following provision :

" The said company shall, as respects the grading, paving, macadamizing, filling, or planking of the streets, or parts of the streets, upon which they shall construct their said

railways, or any part of them, keep eight feet in width along the line of said railway, on all the streets wherever one track is constructed, and sixteen feet in width along the line of said railway where two tracks are constructed, in good repair and condition during all the time to which the privileges hereby granted to said company shall extend, in accordance with whatever order or regulation respecting the ordinary repairs thereof may be adopted by the common council of said city."

It was held by the Supreme Court of the United States, the court of last resort, upon questions of the kind we are now considering, that under this charter the company could not be held liable for improvements made on the streets occupied by its railway, and that its obligation could only be extended to the duty of repairing the streets after they had been improved by the city.

In the case of *State, ex rel.*, v. *Corrigan, etc., Street R. W. Co., supra*, the court, in speaking of the distinction between constructing a street and keeping the same in repair, says : " The obligation to repair a street is one thing, and the obligation to construct a street is another and different thing. To repair a thing is to restore it to a sound state after decay, injury, dilapidation, or partial destruction. To reconstruct is to construct or build again. One who only assumes an obligation to repair a house could not be required to tear it down and rebuild it."

Following these authorities we are constrained to hold that the Citizens' Street Railway Company, under the amended charter of 1878, could not have been compelled to pay assessments for street improvements.

Without torturing the language used, and holding that the words " repair," " construct " and " rebuild," are synonymous, and thus putting ourselves in conflict with all the authorities upon the subject, we can not reach the conclusion that the appellee, which succeeded to the rights of the Citizens' Street Railway Company, is liable under this charter

to be assessed for the expense of paving or repaving the streets of the city of Indianapolis.

The conclusion here reached is not in conflict with the case of *Pennsylvania R. R. Co.* v. *Miller*, 132 U. S. R. 75. In that case the company obtained its charter from the State at a time when such corporations, under the Constitution of the State, were liable for property actually taken in the construction of their railways, but were not liable for consequential damages. Subsequently the Constitution of the State was so amended as to render such corporations liable for consequential damages. It was held that the company had no such contract with the State of Pennsylvania as exempted it from the operation of this constitutional amendment; that it took its charter subject to the general laws of the State, and subject to such changes as might be made therein, and to such changes as might be made in the provisions of the Constitution.

It seems plain to us that there is a broad distinction between the principle announced in that case and the case before us, where the appellee has an express contract limiting its liability to the expense of keeping that part of the streets used by it in repair, and exempting it from the burden of improving the streets. That such a contract as the one before us is binding on the city is abundantly established by the authorities above cited.

In the second paragraph of the complaint the appellant alleged, substantially, that the ordinance of 1888, above set out, was presented to the common council and board of aldermen of the city of Indianapolis, and while the same was under consideration, in order to induce the city to accept and pass the same, and as the consideration moving from the appellee to the city therefor, the appellee then and there promised and agreed with the city that if it would pass the ordinance as presented, the appellee would accept, and did then and there accept and become bound by the ordinance of 1884 above referred to, and that in consideration of said promise,

acceptance and agreement the council and board of aldermen did then and there pass the ordinance, and upon no other consideration.

Substantially the same allegations are contained in the first paragraph of the complaint, except that in this paragraph it is alleged that the appellee, to induce the city to accept and pass the ordinance of 1888, represented to the city that by the terms of said ordinance it was bound to comply with the ordinance of 1884, and that the city acted upon this representation and construction, and passed the same.

These allegations, on motion of the appellee, were struck out by the court, and this ruling is assigned as error.

As we have seen, the ordinance of 1888, as well as all other ordinances granting rights to the company, constitutes a contract between the city and the company.

There is no disagreement among counsel as to the general rule that parol evidence will not be received to vary, contradict, add to or to subtract from the terms of a written contract. Nor is it controverted that the ordinance of 1888 constitutes a written contract between the city and the appellee.

The controversy relates to exceptions to the general rule, and as to whether the case before us falls within any of the exceptions.

It is, substantially, agreed that one of the exceptions to the general rule is that found in Stephens Digest of Evidence, article 90, p. 161, namely, that where the existence of any separate oral agreement is alleged, as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole transaction between them, such oral agreement may be proven.

It is affirmed by the appellant that the case before us falls within this exception, while the appellee denies it.

In the case of *Welz* v. *Rhodius*, 87 Ind. 1, the question

now under consideration was very fully considered. The doctrine as announced in that case, however, has been so far modified by later decisions of this court that it is not now, upon the subject we are considering, to be regarded as unquestioned authority. *Singer Manufacturing Co.* v. *Forsyth*, 108 Ind. 334; *Diven* v. *Johnson*, 117 Ind. 512; *Conant* v. *Nat'l State Bank*, 121 Ind. 323; *Carr* v. *Hays*, 110 Ind. 408.

In the case of *Conant* v. *Nat'l State Bank, supra*, it was said by this court : " It is true that the actual consideration of a contract may be shown by parol evidence, but it is not true that where the acts that a party agrees to perform are expressly and specifically set forth, it may be shown by parol evidence that he agreed to do other things. Where the writing states specifically the acts which the parties are to perform, no other acts can be proved by parol except in cases of fraud or mistake."

So, in the case of *Pickett* v. *Green*, 120 Ind. 584, it was decided that where the contract is complete upon its face a stipulation as to the consideration becomes contractual, and that where there is an express and positive promise to pay a stipulated consideration the general rule applies, and the consideration expressed can no more be varied by parol than any other part of the contract. See, also, *Reisterer* v. *Carpenter*, 124 Ind. 30.

These authorities must now be considered as the law in this State, and in so far as they conflict with the case of *Welz* v. *Rhodius, supra*, that case must be regarded as overruled.

The action of the circuit court in striking out the allegations above referred to, judged by these cases, was not erroneous. The city of Indianapolis, by the ordinance of 1888, granted to the appellee all the rights, privileges and franchises before that time possessed by the Citizens' Street Railway Company, and in consideration of such grant the

appellee assumed all the obligations and duties resting upon that company.

If the Citizens' Street Railway Company was not bound by the ordinance of 1884 it imposed no duty upon it, and to permit the appellant to allege and prove by parol that the appellee assumed the burdens imposed by that ordinance would be to permit it to prove that the appellee agreed to do something in addition to what is expressed in the contract as an additional consideration for the ordinance of 1888. As we have seen this can not be permitted.

Finally it is contended by the appellant that the appellee is estopped from denying the validity of the assessment for the collection of which this suit is prosecuted, by reason of standing by and making no objection to the improvement until the same was completed.

It has often been held by this court that where the owner of property liable to assessment for street improvements stands by and makes no objection to improvements which benefit his property, he is estopped from denying the authority by which such improvements were made, and will be held to pay assessments made in aid of the improvement. *City of Lafayette* v. *Fowler*, 34 Ind. 140; *Hellenkamp* v. *City of Lafayette*, 30 Ind. 192; *Palmer* v. *Stumph*, 29 Ind. 329; *Martindale* v. *Palmer*, 52 Ind. 411.

Where a railroad company is liable to be assessed for such improvements, it will likewise be estopped if it stand by and see the improvements made without objection. *City of New Haven* v. *Fair Haven, etc., R. R. Co.*, 38 Conn. 422.

We have no doubt that such is the law in all cases where the owner of property liable to be assessed stands by and without objection sees improvements made which benefit his property.

The doctrine announced in the cases cited, as stated therein, rests, in a measure, upon statutory provisions to the effect that no inquiry shall be made into questions of fact arising prior to the time the contract is entered into for the improve-

ment, it being held that the property-owner, after allowing the improvement to proceed without objection, should be held to have waived all irregularities, if any existed, in the manner of ordering the improvement and letting the contract. Independent of the statutes upon the subject, it is probably true that a property-owner whose property is subject to assessment for street improvement, who sees improvements made which benefit his property, upon the faith that his property shall bear a part of the expense, and does not object to such improvement, would be estopped upon equitable grounds from denying his liability.

In this case, however, the property of the appellee, as we have seen, was not subject to assessment for street improvements.

The city had the right to make the improvement described in the complaint, and the appellee had no right to object thereto.

It was its duty to adjust its track in such a manner as to conform to the street in its improved condition. It does not appear that the appellee omitted to do anything which it had the right, or which was its duty to do, or that it did anything which it was not in duty bound to perform. Such a case we do not think falls within the authorities above cited.

In our opinion the appellee is not estopped from denying its liability for the assessment sought to be recovered in this case.

Impressed with the importance of the questions involved in this case, we have given them each a careful and laborious consideration, and feel warranted in saying that there is no error in the record for which the judgment should be reversed.

Judgment affirmed.

ELLIOTT, J., took no part in the consideration of this case.

Filed Jan. 10, 1891.

## ON PETITION FOR A REHEARING.

COFFEY, J.—A petition for a rehearing has been filed in this case, supported by an able brief, in which it is contended that the opinion heretofore handed down is in conflict with the opinion of the Supreme Court of the United States in the case of *Sioux City Street R. W. Company* v. *Sioux City,* 138 U. S. 98, decided sixteen days after the opinion in this case was rendered. We have given the case referred to a careful consideration, and have reached the conclusion that it in nowise conflicts with the opinion heretofore rendered by this court in the case at bar.

It appears from the case cited that the code of the State of Iowa contains the following provision :

" SEC. 1090. The articles of incorporation, by-laws, rules and regulations of corporations hereafter organized under the provisions of this title, or whose organizations may be adopted or amended hereunder, shall, at all times, be subject to legislative control, and may be, at any time, altered, abridged or set aside by law, and every franchise obtained, used or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good."

The Sioux City Railway Company obtained a charter from Sioux City to construct a street railway, binding itself to pave the streets used for that purpose, between the rails. Subsequently the General Assembly of that State passed an act requiring street railway companies to pave not only between the rails, but also one foot outside the rails. The question for decision in the case involved the power of the State of Iowa to impose this new burden on the street railway company, the contention of the company being that its charter constituted a contract between it and the city which could not be impaired by a legislative enactment without its consent. Upon the subject of this contention the

court said: "Under section 1090 of the Iowa code, the legislature had the power not only to repeal and amend the articles of incorporation of the company, but to impose any conditions upon the enjoyment of its franchise which the general assembly might deem necessary for the public good. The reservation of this power was a condition of the grant. The city council could make no arrangement with the company which would not be subject, under that section, to the superior power of the general assembly. * *

"No question can arise as to the impairment of the obligation of a contract, when the company accepted all of its corporate powers subject to the reserved power of the State to modify its charter and to impose additional burdens upon the enjoyment of its franchise."

It will thus be seen that the question involved in the case cited was quite different from the questions involved in this case. In that case the whole question turned upon the power of the State of Iowa under the powers reserved by the section of its code set out above, while there is no question of reserved powers involved in the case now before us.

That the States, or municipalities, to which the powers of the State in that respect have been delegated, may contract away the right to tax, in a given case, seems to be settled by the decisions of the Supreme Court of the United States. *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650, and authorities cited.

Pursuant to the request contained in the petition for a rehearing, we have again gone over the questions involved in this case, and feel that there is no error in the opinion heretofore handed down.

Petition for a rehearing overruled.

Filed June 19, 1891.