## ANHEIER ET AL. *v.* FOWLER ET AL.

[No. 7,632. Filed June 6, 1913.]

1. MUNICIPAL CORPORATIONS.—*Public Improvements.—Remedy of Property Owner.—Time of Suing.—Complaint.*—An action by property owners to set aside and cancel as void a contract for the construction of a sewer, is governed by §8959 Burns 1908, Acts 1905 p. 219, §265, providing that no suit to enjoin the construction of any improvement shall be brought unless brought within ten days from the letting of the contract, so that a complaint disclosing that plaintiffs did not bring themselves within the provisions of the statute is fatally defective. p. 543.

2. MUNICIPAL CORPORATIONS.—*Public Improvements.—Remedy of Property Owners.*—Under §8959 Burns 1908, Acts 1905 p. 219, §265, the right of injunction and appeal, as given by the statute itself, are the only remedies open to property owners who are aggrieved by the action of a city or town board in the matter of public improvements. p. 546.

From White Circuit Court; *James P. Wason,* Judge.

Action by James R. Fowler and others against Anthony A. Anheier and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Palmer & Carr* and *William E. Uhl,* for appellants.

*Alfred W. Reynolds* and *Emory B. Sellers,* for appellees.

SHEA, J.—This action was brought by appellees against

appellant Anthony A. Anheier, the town of Monticello, Indiana, the board of trustees of said town and Archie K. Rawlins, interested as a contractor, to have a contract between Anheier and the town, by its board of trustees, set aside and declared illegal and void, and to cancel and annul same. The complaint was in three paragraphs, demurrers to each of which by appellants separately, were overruled. Appellant Anheier filed a separate answer in two paragraphs, the first a general denial. Appellees' demurrer to the second paragraph was sustained. Each of the other appellants filed separate answers in general denial only, which were afterwards withdrawn. Appellant Anheier then filed an amended second paragraph, and additional paragraphs of answer numbered three to nine, inclusive, to each of which appellees' demurrers were sustained. Appellants declining to plead further, judgment was rendered in favor of appellees, annulling the contract.

The errors assigned are that the White Circuit Court had no jurisdiction of the action, or the subject-matter thereof; that the court erred in overruling appellants' demurrers to each paragraph of the complaint, and in sustaining appellees' demurrers to each paragraph of appellants' answers. The first paragraph of complaint, in substance, alleges that appellees, severally, are the owners of real estate in the town of Monticello, Indiana; that on April 2, 1907, the board of trustees of said town ordered the construction of a main sewer, adapted for the use of owners of property abutting thereon and also for receiving sewage from collateral drains already constructed or to be constructed. As a part of the same proceeding the board ordered the construction of thirteen laterals for local use only, to be constructed with funds from assessments on abutting property, and a resolution was adopted ordering the construction of this improvement; that the town engineer made an estimate of the total cost of same of $15,000, which he filed with the board of trustees on or before April 2, 1907, the day set for the hearing; that

no objections were made, and the board found that the improvement was necessary; that the district to be drained by the sewer was properly bounded and that the special benefits to the lands within the district would be equal to the estimated cost, fixing May 7, 1907 as the day upon which bids would be received for the construction of the improvement, and ordering the town clerk to give notice by publication. The only notice given was that the board would receive bids on that day for the construction of the sewer, and award the contract, and no notice was given any person whose property was liable to be assessed, to be present for any purpose; that the board met on May 7, 1907, but no bids were received, and thereupon at the same meeting said board secretly, and without the knowledge of the bystanders, ordered the engineer to reestimate the cost of the work, which he did, by writing on the margin of the map of assessable territory: "Total cost reestimated this May 7, 1907 at $22,000. R. A. Lawrie, Engineer"; that he afterwards filed with the clerk of the town a report that in pursuance with the order of the board, he had made a reestimate of the cost of constructing the sewer of $22,000; that the board without right or authority of law entered an order of approval of the reestimate, which was filed with the town clerk, and thereupon ordered that he give new notice by publication, fixing May 21, 1907, as the day for receiving bids and letting the contract; that appellees had no notice or knowledge that the original estimate had been raised from $15,000 to $22,000 until after May 21, 1907. That the clerk gave notice as ordered by the board, which met on that day and awarded the contract to appellant, Anthony A. Anheier, for the sum of $21,950, and on June 4, 1907, the contract was put in writing and signed by the board and Anheier; that 760 feet of the main sewer next its outlet which will cost about......
thousand dollars, is entirely without the corporate limits of the town, passing across unplatted farm and pasture land, and prior to the execution of the contract the board had

agreed with the owners of this unplatted land, aggregating about thirty acres, that same should be exempt from assessment on account of the construction of the sewer, and thereby the cost of the 760 feet will be added to the assessment of property owned by appellees and others within the assessable area shown by the map; that neither appellees nor other owners of property within said territory have ever been given notice or opportunity to prove whether the total benefit to property within the assessable territory shown by the map filed in the proceedings, was more or less than the estimated cost of $22,000; that the reestimate of the cost of construction was without authority of, and contrary to law, and the contract between the board and appellant, Anheier, was $6,950 above the legal estimate made by the engineer and filed with the clerk; that the part of the assessable area as shown by the map lying west of the Chicago, Indianapolis and Louisville Railway is wholly disconnected and does not abut upon the main sewer or any of the laterals to be constructed under the contract, but must discharge its sewage through the main sewer; that the territory proposed to be assessed lying east of the railway is almost entirely platted and owned by several hundred people some of whom refuse to join in this action, but all of whom are interested the same as appellees, and this action is brought in their behalf as well; that appellant, Rawlins, claims an interest in the contract, and is made a party to this action to answer as to same; that the board of trustees has never passed a resolution or made any finding or order of record that any part of the general funds of the town be appropriated for the payment of any part of the construction of the sewers, so that the entire contract price, if collected, must be borne by the real estate situated in the district shown by the map; that notwithstanding the board found and entered of record on April 2, 1907, that the special benefits accruing to the lands within the district were equal to the estimated cost of the improvement, $15,000,

they now assert that on May 7, 1907, they found and determined 'that such benefits are equal to the reëstimated cost but omitted to record this finding, and on September 3, 1907 will enter same *nunc pro tunc* as of date May 7, 1907. Appellees allege that the question of special benefits to abutting property was not considered by the board on that date, nor was any such finding and determination made then or at any time; that the board at a meeting to be held September 3, 1907, will pass and record a resolution that the special benefits to abutting property holders are equal to the reëstimated cost, which shall be final and conclusive upon all parties, and that the board has no right, power or authority at this time, and will not have on September 3, 1907, to pass and record such resolution, nor to change the district included in the map and confine the assessments to be made for the construction of the improvement to abutting property holders, which would be the effect could the board legally pass the proposed resolution; that if the board is permitted to pass the resolution or make the *nunc pro tunc* entry, it would create a cloud upon the title of appellees and others owning property abutting on the improvement. Prayer that the contract entered into by the board and Anheier be set aside and declared void and all illegal records and corrections of records made or threatened to be made, which will affect the title of appellees' land be cancelled and held void, the cloud thus placed upon appellees' several titles removed and each quieted and set at rest, and for all proper relief.

The second paragraph contains all the allegations of the first, and substantially the following additional charges: That in the original resolution for the construction of the improvement, the area to be drained and benefited was described as within certain boundaries. This territory included lands which did not abut either upon the main sewer or any of the branches, and can only be connected with the outlet sewer by future drainage; that the board caused a

map of the territory within the boundary lines to ·be made
and filed with the clerk, with an estimate of the cost of the
sewer on or before March 5, 1907, and on January 1, 1907,
contemporaneously with the adoption of the resolution
directed Robert A. Lawrie the town engineer to prepare
plans and specifications for the sewer and branches as de-
scribed in the resolution. On January 15, 1907, the engineer
filed with the clerk his report, including plans and specifica-
tions for the improvement, a map (which is the same used
throughout the proceedings) of the territory benefited and
an estimate of the total cost of the work. At the same meet- ·
ing at which his report was filed, the board directed that
notice be given by the clerk that on March 5, 1907, objec-
tions to the construction of the sewers would be heard.
Notice was given, but on that date the board heard no objec-
tions, and adjourned until March 12, 1907, at which time
no meeting was held, nor did it meet again until March 18,
1907, when it adopted a resolution, the same one which was
adopted on January 1, 1907, and fixed April 2, 1907, as
the day it would meet and hear all persons whose property
might be affected, ordering the clerk to give notice, which
was done; that on April 2, 1907, the plans, specifications,
map of assessable territory and estimate of the cost of the
improvement as reported and filed on January 15, 1907,
were adopted; that said plans, specifications and estimate
of cost were the same and only ones considered by the board
and examined by the property owners on April 2, 1907; that
the board found the district to be drained by the sewer pro-
vided for in the original resolution, was properly bounded,
and that the special benefit to the lots and lands within said
district would be equal to the estimated cost of the improve-
ment, $15,000, and no more, which decision has never been
changed, reversed, appealed from nor modified by the board;
that appellees were content with the estimate of the cost,
and with the finding and decision of the board; that the
board never fixed a time and place for any hearing or review

of said decision, nor gave notice in any manner that at any time it would review, reconsider, change or modify such finding, and the same remained unchanged until the date of the letting of the contract, and the board having advertised for bids to be received on May 8, 1907, and receiving none, readvertised, fixing May 21, 1907, as such date, when it awarded the contract to Anheier for $21,950, which was $6,950 more than the total special benefits accruing to the lands in the territory bounded by the original resolution; that on July 6, 1907, a written contract was entered into with Anheier by the terms of which the contract price of $21,950 is to be paid out of the assessments against benefited property, and such bonds as may be issued on account thereof; that the board never provided by resolution or otherwise that any part of the cost of construction of the sewer should be paid out of the general fund of the town, but it is, on the contrary, expressly provided that the costs and expenses shall be assessed against the real estate benefited, and turned over to the contractor, either in original assessments or bonds to cover same; that appellees resided in the town of Monticello, Indiana, and knew the contract was made without authority of law, and provided for the payment of sums of money largely in excess of the total special benefits accruing to the real estate liable to be assessed therefor, which would be unlawfully levied and assessed against appellees' lands, and many thousands of dollars in excess of the special benefits which will accrue to the lots and lands abutting on the sewer and its several branches; that the board ordered the construction of a branch of the sewer through lots belonging to Charles A. Holliday, William E. Biederwolf, and Ida Biederwolf at a place where there is no street or alley, and without condemnation proceedings, and that the board and other appellants have no right, power or authority to enter upon these private grounds to construct the branch, which will result in laying tile without an outlet therefor; that this will be useless and

result in an outlay of money with no resultant benefits, for a part of which appellees' real estate lying within said territory will be unlawfully assessed; that the board of trustees, knowing the facts herein alleged, purposely and fraudulently accepted the bid of the contractor Anheier, and executed the contract in order that Anheier might obtain a profit on the work done and materials furnished under the contract, and intends to assess the expense of establishing the improvement and cost of superintending the work and the contract price against the real estate included in the area described in the original resolution, including appellees' lots and lands, and thus create a cloud upon their titles. A copy of the contract is made a part of this paragraph of the complaint by exhibit.

The third paragraph of complaint repeats the allegations of the second with this difference as to certain described land outside the town boundary belonging to William H. Robinson and Samuel E. Roth, mentioned in the second paragraph, through which the main sewer passes a distance of about 760 feet to its outlet. Instead of the charge that the board of trustees obtained the right to put the sewer through these lands by an agreement with the owners that their lands should be exempt from assessment on account of the improvement, it is, in substance, alleged that the order for the construction of the sewer was made and the contract for the work let and executed by the board of trustees without having acquired the right to construct the sewer or to maintain the same, by condemnation proceedings or in any other manner, through any of said grounds; that besides the lots of William E. and Ida C. Biederwolf and Charles A. Holliday mentioned in the second paragraph of complaint, this paragraph charges substantially that the sewer passes through other private grounds where there is no street or alley, namely, certain described land belonging to William Keever and an outlot belonging to John Teeter, and that said board made the order for the construction of the sewer

and executed the contract without having acquired any right, by condemnation proceedings or otherwise, to construct the sewer through any of said private grounds, and this right had not been acquired in any manner up to the time of bringing this action; that no one had any right or authority to enter upon the grounds to construct said work, could not do so, and consequently the order of construction and the contract were void and of no effect. The relief asked in this paragraph is substantially the same as that asked in the first.

It is the opinion of this court that §8959 Burns 1908, Acts 1905 p. 219, §265, governed this proceeding. It expressly provides, "That no suit to enjoin the construction 1. of any improvement shall be brought by any property owner unless brought within ten days from the letting of such contract." This section and this particular portion of the act has received the sanction of the Supreme Court of.this State in the case of *Martindale* v. *Town of Rochester* (1908), 171 Ind. 250, 86 N. E. 321. The complaint discloses that appellees did not bring themselves within the provisions of said act. They now seek to accomplish indirectly what they should have done directly. The act itself governs and controls all the conduct of the town board, and the aggrieved taxpayers should have taken advantage thereof. Any other construction of the act would tend to endless confusion and hopeless litigation.

The case of *Martindale* v. *Town of Rochester, supra,* is an exhaustive case with much citation of authority, and goes into a discussion of the important questions in this case. The court.in passing upon §8959 Burns 1908, uses the following language: "Besides, it will be observed that all the grounds or reasons set out in this opinion, which appellant claims show that the proceeding and contract for said improvement were void, relate to matters before or at the time of the letting of the contract. It is expressly provided in §8959, *supra,* 'that no suit to enjoin the construction of any

improvement shall be brought by any property owner unless brought within ten days from the letting of such contract.' The object of said statute is evident and its effect just, for it requires the property owner who desires to question the validity of the contract to commence his suit therefor 'within ten days from the letting of the contract,' that is, before any substantial part of the improvement is made. If the property owner does not commence such suit within the ten days mentioned, he cannot, after the improvement is completed, maintain a suit to enjoin the making or collecting of benefits for any ground existing prior to the expiration of said ten days. So construed, this statute gives effect to a well-settled principle of equity, for it precludes a property owner, who permits a contractor to improve a street, from defeating a recovery for the work because of errors or irregularities which occurred before the time the contract was executed. *Taber* v. *Ferguson* (1887), 109 Ind. 227, 231, [9 N. E. 723], and cases cited; *Barber Asphalt Pav. Co.* v. *Edgerton* [(1890), 125 Ind. 455, 25 N. E. 436], *supra,* and cases cited; *McEneney* v. *Town of Sullivan* [(1890), 125 Ind. 407, 25 N. E. 540], *supra; McCoy* v. *Able* (1892), 131 Ind. 417, 422-426 [30 N. E. 528, 31 N. E. 453], and cases cited; *DePauw Plate Glass Co.* v. *City of Alexandria* (1899), 152 Ind. 443, 451, 452 [52 N. E. 608]; *Board, etc.* v. *Plotner* (1897), 149 Ind. 116, 119, 121, [48 N. E. 635] and cases cited. It was said in the case last cited: 'It is a general rule, now fully accepted in this State, that where the owner of property subject to assessment for public improvements stands by and makes no objection to such improvements which benefit his property, he may not deny the authority by which the improvements are made, nor defeat the assessment made against his property for the benefits derived. And this is true, both where the proceedings for the improvement are attacked for irregularity, and where their validity is denied, but color of law exists for the proceedings. *Palmer* v. *Stumph* (1868), 29 Ind. 329; *Hellenkamp*

v. *City of Lafayette* (1868), 30 Ind. 192; *City of Evansville* v. *Pfisterer* (1870), 34 Ind. 36, 7 Am. Rep. 214; *City of Lafayette* v. *Fowler* (1870), 34 Ind. 140; *Muncey* v. *Joest* (1881), 74 Ind. 409; *City of Logansport* v. *Uhl* (1885), 99 Ind. 531, 50 Am. Rep. 109; *Peters* v. *Griffee* (1886), 108 Ind. 121 [8 N. E. 725]; *Taber* v. *Ferguson* (1887), 109 Ind. 227 [9 N. E. 723]; *Ross* v. *Stackhouse* (1888), 114 Ind. 200 [16 N. E. 501]; *Prezinger* v. *Harness* (1888), 114 Ind. 491 [16 N. E. 495]; *Western Pav., etc., Co.* v. *Citizens St. R. Co.* (1891), 128 Ind. 525 [26 N. E. 188, 28 N. E. 88], 10 L. R. A. 770, 25 Am. St. 462; *McCoy* v. *Able* (1892), 131 Ind. 417 [30 N. E. 528, 31 N. E. 453]; *Vickery* v. *Board, etc.* (1893), 134 Ind. 554 [32 N. E. 880]; *Cluggish* v. *Koons* (1896), 15 Ind. App. 599 [43 N. E. 158]. In *Vickery* v. *Board, etc., supra,* the proceedings were attacked upon the ground that the law under which they were had was unconstitutional, and this court held that one who receives the benefits under an unconstitutional law cannot deny the constitutionality of such law. In *Cluggish* v. *Koons, supra,* it was held that the proceeding under a law which had been repealed may not be attacked, as invalid, by one who has stood by and permitted his property to be benefited by such proceeding. In *McCoy* v. *Able, supra,* it was said: "Principle and authority forbid that property owners should be allowed to stand by, inactive and passive, until after the work has been done, and then come in and take from the contractor the value of his work and materials without compensation. For such persons the law has no very tender regard." In *Ross* v. *Stackhouse, supra,* it was said that "in every event, one who acquiesces, with knowledge, until after the improvement has been completed, cannot escape payment for the actual benefits received, even though the proceedings turn out to be void, provided the contractor proceeds in good faith and without notice from the property owner. He cannot enjoy the benefits and escape the burden, unless he interferes or gives notice before the benefit is received." In *Prezinger*

v. *Harness, supra,* it was said: "The authorities fully justify the statement that, where an improvement is made under color of statutory proceedings, unless such proceedings are so totally and palpably void as that the person who made the improvement or performed the work must have proceeded with a degree of recklessness that amounted to bad faith, the property owner who stood by and received the benefits assessed against his property will be estopped to assert the invalidity of the proceedings without first paying, or offering to pay, the benefits." ' "

Appellees, in this case, without bringing themselves within the terms of the statute, question the validity of the contract. If the contention of appellees in this case is permitted to prevail, the effect of it will be that one whose property is affected by a public improvement, may stand by until he receives the benefit thereof, and after the contractor and all public officials and other property owners have expended large sums of money, may invoke the jurisdiction of the circuit or superior court in an effort to set aside the action of the governing tribunal of the city or town. The fact that original jurisdiction is lodged with city and town boards, together with the fact that the right of injunction and appeal from the board's action is given by the act itself, goes far to convince us that these were the only remedies intended by the legislature. §8959 Burns 1908, *supra; Randolph* v. *City of Indianapolis* (1909), 172 Ind. 510, 88 N. E. 949; *City of Indianapolis* v. *State, ex rel.* (1909), 172 Ind. 472, 88 N. E. 687.

In the case of *Everett* v. *Deal* (1897), 148 Ind. 90, 47 N. E. 219, the court uses this language: "The contract was let April 13, 1896; and this action to enjoin the work was not brought until June 8, 1896, and after the work was begun. It was said in *Alley* v. *City of Lebanon* [1896], 146 Ind. 125, [44 N. E. 1003] citing *Robinson* v. *City of Valparaiso* [1894], 136 Ind. 616, [36 N. E. 644] also, sections 4288-4299 Burns R. S. 1894 (Acts 1889 p. 237; Acts 1891 p.

323), that an injunction might, in proper case, be had 'upon the proceedings prior to the making of any such [street or sewer] improvements;' but that 'from the time that work begins under a lawful contract, vested rights attach; and the faithful completion of the work is placed by the law in custody of the city authorities, chosen by the people and clothed with power to care for the common welfare.' "

Many other questions are discussed, including the alleged errors on the sustaining of the demurrers to eight paragraphs of answer, but in view of the conclusion reached by the court it is unnecessary to pass upon them.   It may be suggested that appellees were not parties to the original contract.   Their interest in the matter is incident to their property being assessed with benefits.   We suggest without deciding that they have not such an interest in the original contract as entitles them to have the whole contract declared void.   Their remedy would be an appeal or a suit by injunction as provided by the terms of the statute as above set out.

Judgment reversed with instructions to sustain appellants' demurrers to each paragraph of the complaint.

Note.—Reported in 102 N. E. 108.  See, also, under (1) 28 Cyc. 1021; (2) 28 Cyc. 1017, 1018, 1096. As to the right of a taxpayer, in absence of statute, to enjoin unlawful expenditures by municipality on highway, see 36 L. R. A. (N. S.) 23.