MERCANTILE TRUST & DEPOSIT CO. OF BALTIMORE, MD., et al. v. COLLINS PARK & B. R. CO. et al.

(Circuit Court, N. D. Georgia. April 30, 1900.)

No. 1,080.

1. STREET RAILROADS—GRANT OF FRANCHISES—EFFECT AS CONTRACT.

The grant by a city to a street-railroad company of a franchise to construct and operate its road on certain streets, when accepted and acted upon by the company, constitutes a contract between the city and the company, which the city cannot infringe or impair; and the company thereby obtains such a property right in its tracks, when constructed, and in its franchise to operate the same, that the city cannot authorize their use by another company unless such power is reserved in the grant. In the absence of such reservation, or beyond its terms, such right can only be acquired by another company under the power of eminent domain conferred upon it by the state.

2. SAME—RIGHT OF CITY TO ATTACH CONDITIONS TO GRANT.

Under the provision of the constitution of Georgia, which requires the consent of the corporate authorities of an incorporated town or city to the construction of a street railroad therein, such authorities may annex conditions to their consent; and a company which accepts a grant containing a reservation to the city of the power to condemn portions of its tracks for the joint use of other companies when deemed necessary, upon payment of just compensation, cannot repudiate such condition on the ground that the city has no statutory power to make condemnations for such purposes.

3. SAME—RESERVATION IN GRANT—CONSTRUCTION.

The city council of Atlanta, in a franchise granted to a consolidated street-railroad company, reserved to the city "the right to condemn such portions of said lines, not exceeding five blocks, as may be necessary for the allowing of other street-car companies to enter the central portion of the city." Held, that such reservation extended only to those portions of the company's lines within what might fairly be considered the central portion of the city, and did not authorize the condemnation of portions of its track outside that limit, although for the purpose of enabling a new company to ultimately enter the central portion of the city.

4. SAME—EXERCISE OF POWER RESERVED BY CITY.

Under such grant the city council has power to determine when the necessity exists for exercising the right reserved, subject only to the condition that its judgment must be based on reasonable grounds.

5. SAME.

The company, under the contract made by its acceptance of the grant containing such reservation, cannot object to the exercise of the power reserved in any reasonable and proper manner; and the city may, on determining the necessity for condemning portions of the company's tracks for the use of another company, properly authorize the latter to institute proceedings in its own name to make the condemnation in accordance with the procedure prescribed in such cases by the laws of the state.

6. SAME.

Under such reservation, reasonably construed, the city had the right to make and enforce such regulations as to the movement of cars or use of tracks by the company as were reasonably necessary to make the purpose of the reservation effective, by enabling the portion of the track condemned to be jointly used by the two companies.

7. SAME.

The exercise of the power of condemnation under such reservation as to a short portion of track is not reasonably justified, where each company requires but a single track, and the street is of sufficient width to accommodate two tracks without interference with other travel along it or with each other.

8. SAME.

A determination by the city council of the necessity of condemnation under such reservation for the purpose, therein expressed, of enabling the second company to enter the central portion of the city, where ineffectual because the portion of track to which it relates is outside of the limits contemplated by the contract, cannot be construed as an adjudication of the necessity of condemnation by the second company under a power given it by its charter, to be exercised under certain circumstances and upon different grounds, or as a consent by the city to the condemnation on such grounds.

In Equity. On motion for preliminary injunction.

King & Anderson and Goodwin & Hallman, for complainants.

Brandon & Arkwright, King & Spalding, Rosser & Carter, and John L. Hopkins & Sons, for defendants.

James A. Anderson, City Atty., and J. T. Pendleton, for city of Atlanta.

NEWMAN, District Judge. On May 20, 1891, the mayor and general council, the governing body of the city of Atlanta, on the petition of Joel Hurt and A. A. Glasier, representing certain independent lines of street railway then being operated in the city of Atlanta, granted to the companies represented by said Hurt and Glasier certain rights of consolidation and electrical equipment, more particularly set out in the ordinance of the city as contained in the Code of Atlanta, p. 506. It is shown by the report of the committee that the purpose of the petitioners was to combine said lines into a company to be known as the Atlanta Consolidated Street-Railway Company. This purpose was subsequently accomplished, and on December 10, 1891, the city, on the petition of the Atlanta Consolidated Street-Railway Company, by resolution recognized the consolidation as having been accomplished, and granted the privileges theretofore granted on the petition of

Hurt and Glasier to said Atlanta Consolidated Street-Railway Company. In speaking of this grant hereafter it will be referred to as the grant to the Consolidated Company. The only part of the grant on the petition of Hurt and Glasier which need be mentioned here is contained in the ninth paragraph of the report of the committee, as adopted by the mayor and general council, which is as follows:

"That the right to condemn such portions of said lines, not exceeding five blocks, as may be necessary for the allowing of other street-car companies to enter the central portion of the city, is hereby reserved, upon payment of just compensation to the company."

There were subsequent grants for various purposes to other lines which became part of the Consolidated System, as to which the foregoing reservation applied because the conditions, etc., in the grant to the Consolidated Company were expressly referred to, and others in which the reference is not specific, but as to which it is claimed that the terms employed are such as necessarily make this clause and the reservation contained therein a part of the grants. There has recently been a change of corporate name, and the Atlanta Consolidated Street-Railway Company has become the Atlanta Railway & Power Company.

On August 23, 1899, the mayor and general council granted to the Collins Park & Belt Railroad Company the right to use certain streets of the city of Atlanta for railway purposes, and the "right to condemn the use of, and such an interest therein as may be necessary to the use of," certain parts of the tracks of the Atlanta Railway & Power Company, upon the payment of just compensation. In connection with each of the grants of the right to use a portion of the track of the Atlanta Railway & Power Company, reference is made to reservation contained in section 9 of the grant to the Consolidated Company referred to, and this part of the grant to the Collins Park Company recites that the mayor and general council adjudge the existence of the necessity of such condemnation in each instance. After this right had been granted the Collins Park Company to condemn certain portions of the tracks of the Railway & Power Company, the Collins Park Company notified the Railway & Power Company that it had appointed an assessor to act with an assessor to be appointed by the Railway & Power Company, to fix the amount of the compensation which should be paid by the Collins Park Company to the Railway & Power Company for the use of the tracks of the latter company, in accordance with the grant of the city council. A similar notice was served on the Mercantile Trust & Deposit Company of Baltimore, Md., trustee for a large amount of bonds issued by the Railway & Power Company. On the 18th day of November, 1899, the trust company filed its bill in this court against the Collins Park Company and the city of Atlanta. A question of jurisdiction was raised, which was disposed of and an opinion of the court was filed on the 7th day of February, 1900. See 99 Fed. 812. After this opinion was filed, on petition of the attorneys, an order was entered making the Atlanta Railway & Power Company a party complainant, and overruling the pleas to the jurisdiction. The bill has been answered, and this is a hearing on an application for injunction pendente lite to restrain proceedings to con-

demn, on the bill, answer, and evidence submitted, documentary and by affidavit.

The rights and privileges granted the Consolidated Company in the various streets of the city to which each grant applied, when such grants were accepted and acted upon by the company, created a contract between the city and the company. When the company laid its tracks in the streets of the city in pursuance of the grant, it obtained a property right in such tracks, and in the franchise or right of operation over the same, which could not be infringed or impaired. Elliott, Roads & S. p. 564; Booth, St. Ry. Law, §§ 8, 9. In Western Paving & Supply Co. v. Citizens' St. R. Co., 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, 10 L. R. A. 770, the rule on this subject is stated in this way:

"It is settled that a charter granted by the common council to a street-railway company to construct and operate a street railway within the corporate limits of the city constitutes a contract between such railway company and the city,"—citing: City of Chicago v. Sheldon, 9 Wall. 50, 19 L. Ed. 594; Coast-Line R. Co. v. City of Savannah, 30 Fed. 646; State v. Corrigan Consol. St. Ry. Co., 85 Mo. 263; District of Columbia v. Washington & G. R. Co., 4 Am. & Eng. Ry. Cas. 161; Farrar v. City of St. Louis, 80 Mo. 329; New Orleans Gaslight Co. v. Louisiana Light & Heat Producing & Manufacturing Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Greenwood v. Freight Co., 105 U. S. 13, 26 L. Ed. 961; New Jersey v. Yard, 95 U. S. 104, 24 L. Ed. 352.

In City R. Co. v. Citizens' St. R. Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114, speaking of the right of the same company, it is said:

"That the plaintiff had a contract with the city is entirely clear. It was so held by the supreme court of Indiana in Western Paving & Supply Co. v. Citizens' St. R. Co., 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, 10 L. R. A. 770, in which the liability of the company for certain street improvements was discussed and passed upon."

From the opinion in this last case another quotation may be pertinent, as follows:

"The original ordinance of January 18, 1864, was plainly a proposition on the part of the city to grant to the company the use of its streets for 30 years in consideration that the company lay its tracks and operate a railway thereon, upon certain conditions prescribed by the ordinance. This proposition, when accepted by the company, and the road built and operated as specified, became a contract which the state was not at liberty to impair during its continuance; but if, at the expiration of the 30 years, the road had been sold to another company, and that company had applied for and obtained from the common council a franchise to occupy its streets for another period, it seems to be clear that such a contract would need no other consideration to support it than the continued operation of the road under such conditions as the city chose to impose."

The thoroughly argued and well considered case of People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, on this question, is interesting, and states clearly the law relating to railway corporations obtaining franchises in the streets of a city.

It is useless, however, to multiply authorities upon this question. They are numerous, and sustain the proposition that a contract exists between the city and the Railway & Power Company, subject only to reasonable police regulation. The right of police regulation involving such governmental duties as relate to the safety and comfort of the people, and the orderly use and regulation of the streets, the city does

not, of course, abrogate by such grants, even when the same have, by acceptance, expenditure, and use on the part of the railway company, ripened into contracts. There is no question of police regulation here, however. The right to take the track of one company for the use of another must be reserved in the grant, or exist otherwise by contract, or such taking must be by the exercise of the state's power of eminent domain through the legislature of the state. Confessedly, the city has no power of eminent domain with reference to the matters in controversy here. It has no grant from the legislature to condemn the track of one street-railway company for the use of another. The only rights it has or can exercise are by reason of the reservation contained in the grant to the Consolidated Company. There is no question of the exercise of the power of eminent domain in connection with the city's direct action in the matter. How far the exercise of this power by virtue of the provisions of the charter of the Collins Park Company, and the city's action with reference thereto, is material, will be considered in disposing of another branch of the case.

It is said for the complainants that the city could not legally make this reservation of a right to condemn, in certain contingencies, part of the Railway & Power Company's tracks; that, having no power under its charter to condemn a part of the tracks of one railway company for the use of another, it could not reserve the same to itself, and by the reservation acquire a right which it did not have under the law. This argument is not sound. The constitution of the state (article 3, § 7, par. 20) provides that "the general assembly shall not authorize the construction of any street passenger railway within the limits of an incorporated town or city without the consent of the corporate authorities." The consent of the city was necessary, therefore, for the laying of additional tracks and the connection of the tracks of the different companies, the consolidation of which was proposed, and which was allowed by the provisions of the Consolidated grant. The right to consent to the use of the streets for street-railway purposes embraces necessarily the right to consent conditionally,—to consent with limitations, restrictions, and reservations. The city, of course, could withhold its consent entirely. There can be no doubt, therefore, of its right to withhold partially or to limit the grant. The Consolidated Company could have refused to accept the grant with this reservation in it. Accepting the grant, however, with this provision in it, it was bound by it, and cannot now set up the lack of power of the city to make the reservation. The city might not have made the grant without the reservation, and, indeed, there is evidence in the record, which all parties agree can be properly used, which shows that there was a discussion of this question between the committee of the city council and the grantees, and that the provision making the reservation as it was finally framed and embodied in the grant was mutually satisfactory. It would be manifestly unjust to hold that the Consolidated Company could accept the grant with the distinct knowledge and understanding that this reservation was contained in it, and then, when the city sought to make the reservation effective, repudiate it and deny the power of the city to make it.

One of the important phases of the case, and to which much of the argument has been directed, is the meaning of the term "lines," as contained in this reservation in the grant by the city to the Consolidated Company. It has been thought probable by counsel that this question was important to a determination of the present controversy. It is said for the complainants that the word "lines," as used in this reservation, refers to the lines of the Consolidated Company in the aggregate, and that therefore this reservation applies to five blocks of its lines, in all. On the other hand, it is contended that the reservation was as to five blocks of each line of the Consolidated Company. It has also been urged in argument for the defendants that the reservation would apply in any event only to such lines as acquired privileges by virtue of the Consolidated grant, but this is not material at present. Counsel have offered very plausible arguments in support of the respective contentions as to the meaning of this reservation. It is unnecessary, in view of the conclusions which have been reached as to the rights of the parties in this case, to express any opinion on this question. Any conclusion that might be reached would not be free from doubt, and, as its determination at present is immaterial, it had better be left to be passed upon at the final hearing of the case, or when, in some new aspect, its decision is necessary.

Another part of this reservation has given rise to opposing views and to considerable argument in the progress of the case, and that is the language, "to enter the central portion of the city." It is said on the one hand that this gives the right to the city to permit the condemnation of only such blocks as are within what may be fairly considered the central portion of the city. On the other hand it is said that, if the purpose is to reach the central portion of the city, the right is reserved to condemn blocks, even though they be not in the central portion of the city. In determining this question it is important to consider for a moment the way the streets of the city of Atlanta run. The corporate limits of the city, as originally constructed, were a circle. The circle was subsequently enlarged, and now is broken into in two or three places, where the growth in population has made it necessary to extend the corporate limits somewhat beyond the circle, but generally the circle exists yet. The main streets of the city run from center to circumference, or, as it would be better expressed for the purposes of this case, from circumference to center. This makes the traffic and business in the central portion of the city much more congested than would be the case in a city where the streets were laid out at right angles. This situation was evidently in the minds of the city authorities when this reservation was made. It is practically possible to reach the center of the city from the outskirts over only a few lines, and it is certain that this actuated the committee of the city council, and the council itself, when this provision was inserted in the Consolidated grant. The business portion of the city is in its geographical center. The great purpose of street-car lines was to carry passengers to and fro from the suburbs and residence portions of the city generally, to the business center. The language used is, "the allowing of other street-car companies to enter the central por-

tion of the city." But one construction can be given to this language, and that is that the city reserved the right to condemn the number of blocks referred to within what may be fairly considered the central por··on of the city. If the council had had any other purpose in view, it would certainly have been differently expressed. If it had the purpose which is contended for by defendants' counsel, it would simply have said "the right to condemn five blocks of the Consolidated's tracks," without using any qualifying language at all. These blocks are to be used for the purpose of allowing any new company to enter the central portion of the city, and not to approach it, or to run in such a way that it may ultimately reach it. The meaning of this expression in the reservation is so obvious that it scarcely requires elaboration.

The necessity for this condemnation is to be determined, however, before the right reserved can be exercised. The mayor and general council of the city, as has been stated, in the recent grant to the Collins Park Company, adjudged the necessity for this condemnation, in respect to the sections of the Railway & Power Company's tracks as to which the right to condemn was given. Complainants contend that it is not just, nor is it legal, for the city, as a party to this contract, to itself adjudge the necessity of that which it reserved. While the city is a party to the contract in one sense, it is a party as the representative of the public. It stands for the public. It is entirely impartial as between the public and the railway company. The judgment of the city council as to whether or not there is a necessity for the use of these reserved blocks by a new company is without prejudice or preference. It is exercised solely in the public interest, with due regard to the rights of the railway company. The courts cannot assume that it will act otherwise. In this view, it is wholly immaterial that it made the reservation in question, and was to that extent a party to the contract of which the reservation is a part. The determination of the city council, however, where private rights are affected, must be reasonable. An unreasonable exercise of a reserved power or of a delegated power will not be upheld by the courts, and, where there is an attempt to enforce a wholly unreasonable exercise of even a discretionary power, its enforcement, where private rights are affected, will, in a proper case, be enjoined. If, therefore, the judgment of the city has been exercised in a wholly unreasonable manner as to the matters in controversy, its action cannot be sustained by the courts.

There is an ordinance of the city of Atlanta, passed in 1890 (City Code, § 1326), as follows:

"The mayor and general council of the city of Atlanta, in granting franchise to street railroads and street-car companies of whatever motive power, reserve the right to grant a franchise to another company or companies when in their judgment the public interest and welfare is subserved thereby, over any part of any street or streets, not to exceed three blocks, or 1,200 feet, upon the petitioning party or company paying a pro rata part of the original cost of construction, and a pro rata part of keeping up in good repair of that part of the roadbed used by them jointly."

It is contended that this ordinance was not affected by the grant to the Consolidated Company and the reservation made therein, and

that it must be considered in connection with the controversy here. Counsel for the respective parties differ as to the proper construction of this ordinance. It is claimed on the one hand that it authorized the use, in the discretion of the city authorities, by one company, of the tracks of another, and on the other hand that it relates only to the joint use of streets, and does not refer to the use by one company of the track of another; but, even if it had this meaning, in view of the undisputed evidence before the court as to the proceedings had when the grant was made to the Consolidated Company and the reservation agreed to, this ordinance was modified and repealed so far as it is inconsistent with the reservation. Unquestionably the reservation was a contract, in the respects material here, between the city and the Consolidated Company. The city is bound by it, and its action, as well as that of the Consolidated's successor, the Railway & Power Company, should be controlled by it, and it alone. The city's grant to the Collins Park Company, as has been stated, is based entirely on the reservation in the grant to the Consolidated Company, and the city does not assume to act by virtue of any other power or authority. In the charter of the Collins Park Company, the legislature granted to it the rights theretofore granted to the Metropolitan Street-Railroad Company, and one of these rights was to condemn, when certain conditions therein specified existed, certain parts of the track of another street-railway company. The charter of the Collins Park & Belt Railroad Company is found in the acts of the legislature of Georgia of 1889 (page 211), and the charter of the Metropolitan Street-Railroad Company in the acts of 1882–83 (page 201). The exact language of the charter of the Metropolitan Company material here (section 5), subsequently re-enacted as to the Collins Park Company and made a part of its charter, is as follows:

"Said corporation, for the purpose of making a· connected line, or for the purpose of crossing any other street railroad with its road, may lay its tracks upon and occupy with its railroad or tracks any street or streets upon which any other street-railroad company may have its tracks, or may have the right to lay its tracks at the time: provided, it does not at any one place occupy more than five full city blocks front, contiguous to each other, and if the proper municipal authority determine that the street or streets so sought to be occupied by the tracks of both roads is not wide enough for both of said roads to have passage tracks, and at the same time to leave space enough for the passage of vehicles, then, and in that event, said corporation shall have power and authority to condemn to its use such parts of said other railroad as may be necessary for the purpose of making a connected line or of crossing any other street railroad with its road, not exceeding in any one place three full city blocks contiguous to each other. Said condemnation shall be made after the decision is made as aforesaid, by said municipal authorities, that such condemnation is necessary to the convenience of the city in the exercise of its control over the streets of said city, by pursuing the provisions and mode pointed out in section 6 of this act; and said track or road so condemned shall be used by each of said roads, each having equal rights thereon; and, in maintaining said track or road so used in common, each company using the same shall pay pro rata in proportion to the number of cars run on said track: provided, that the part of said track of any other railroad company which may be condemned with the consent of said municipal authorities shall be so used by each of said companies using the same; that neither one shall damage the business of the other nor delay its cars running upon said tracks so condemned."

The contention of counsel for the Collins Park Company with reference to the grant by the city to that company, and the extent to which the grant carried with it a determination of the rights in respect to condemnation contained in its charter, will be noticed hereafter, in connection with one of the separate grants of the right to condemn.

In this connection it will be proper to refer to another contention of counsel for complainants. They urge that, inasmuch as the city reserved the right to condemn by the terms of the reservation to itself, condemnation proceedings, if they can be instituted at all (which they deny), should be by the city. They claim that the right to condemn reserved by the city can only be exercised by it, and could not be transferred by it to the Collins Park Company. As has been stated, the reservation in the grant to the Consolidated Company became a contract between the city and the Consolidated, by which the city was bound, and by which the Consolidated was bound. There was an implied agreement on the part of the Consolidated Company when it accepted and acted upon the grant, having this reservation in it, that the city might take the number of blocks of its track reserved, at proper points; and it must be held that there was also an implied agreement that it would abide such reasonable procedure as was necessary to render the reservation by the city, and its agreement to the same, effective. The method adopted by the city was to allow the Collins Park Company to institute proceedings to ascertain the compensation which should be awarded the present corporation, the Railway & Power Company, in accordance with the law of the state of Georgia on this subject. The Code of Georgia (section 4667 et seq.) contains this law, and the proceedings on the part of the Collins Park Company in accordance with the city's authorization are in substantial, if not literal, compliance with this law. Unless this reservation by the city becomes nugatory, there must be some method of carrying it into effect, and certainly a just and proper method is provided when the general law of the state on this subject is adopted. An arbitrator appointed by each, with the right, in case they disagree, to select an umpire, seems to be a method entirely just and reasonable, and really the proper legal course.

Considerable evidence has been introduced to show that there are other practicable routes than those given to the Collins Park & Belt Company by the city council, and routes which would not have required it to go upon the tracks of the Railway & Power Company at all. There is also evidence and contradictory evidence as to the practicability of the use by one company of the track of another,—particularly with reference to joint use of overhead wires, poles, etc. In addition to the fact that the city council appears to have given a thorough investigation to this whole matter, and to have acted after a most careful examination of the subject, the evidence here clearly preponderates in favor of the proposition that a joint use of tracks, as well as of the necessary appliances, is practicable; certainly so, if there be proper effort on the part of the managers of the two companies to accomplish the same, and render it satisfactory. The evidence is sufficient to show, perhaps, that it should not be done except in

cases of real necessity. It may not be a desirable thing to do, and it probably should not be resorted to, if it can be well avoided; but that it is practicable, under proper arrangements, the evidence seems to demonstrate. All this, however, as well as the matter of determining the routes to be pursued generally by the new line, are clearly matters in the discretion, properly exercised, of the city authorities, and that discretion will not be interfered with by the courts except where it is abused. The courts cannot undertake to review and determine the action of the city council in matters such as are here involved, except where there is illegal action, and such abuse of discretion as makes the ordinance unreasonable, and one that should not be enforced.

We come now to consider each of these grants to the Collins Park Company to use the track of the Railway & Power Company separately, and to apply to these several grants the conclusions that have been reached, as hereinbefore expressed. These are not taken in the order in which they appear in the committee's report adopted by the city council, but are referred to in such a way as they can be more easily and readily disposed of.

The first considered is the grant to use the tracks of the Railway & Power Company on Whitehall street, from Mitchell to Alabama. The right, as expressed in the grant, is to use the double tracks of the Railway & Power Company on Whitehall street, between Mitchell and Alabama; the right thus granted involving a change of the single track between Hunter and Alabama so as to make the same a double track, to be used jointly by the two companies. This part of the Railway & Power Company's track between Mitchell and Alabama is clearly within the central portion of the city. The judgment of the city council that the joint use of tracks at this point is necessary is so reasonable and proper, under the evidence and from common observation, that it may pass without question. The only matter of any difficulty involved is that which requires the Railway & Power Company to use the tracks which will be laid between Hunter and Alabama by the Collins Park Company. It is hardly contested that the city could, even in the exercise of its general powers over the streets, require the Railway & Power Company to move its track to one side of the street at this point, and allow the new company to build another track. If this be true, it seems entirely reasonable that the city should, under a fair and just construction of this reservation, require the cars to be so operated by both companies that at this congested point the cars on one side of the street should all move in one direction, and on the other side in the opposite direction. It is not entirely clear, either, from the present location of the tracks, that it will be necessary for the Railway & Power Company to use the track of the Collins Park Company between Alabama and Hunter at all. They only use their tracks now between Hunter and Alabama, as shown by the evidence, as a line coming into the city; their cars going out on Broad, and thence through Hunter to Whitehall. But the city undoubtedly has the power, under this reservation, to grant the right to condemn the use of the tracks of the Railway & Power Company on these two blocks for the use of the Collins Park Company; and, assuming such a right, it seems an inevitable conclusion that such a change and readjustment

of the tracks as may be fairly and reasonably necessary to make the reservation effective and to accomplish its purpose can be ordered and enforced by the city authorities.

The next separate grant to be considered is that of the right to use the portion of the tracks on Peachtree street between Auburn avenue and Edgewood avenue. The part of the Railway & Power Company's track sought to be condemned is 238 feet, leaving the Railway & Power Company's tracks just below Walton street. There was some difference between counsel, in argument, as to whether or not this part of the track on Peachtree street sought to be condemned was one block or two blocks; but, it being only 238 feet, it was finally conceded by counsel for the Railway & Power Company that it could not be fairly claimed that it was more than one block. This, also, is unquestionably within the central portion of the city, and a necessity for its use in order to reach the central portion of the city is apparent. There was no abuse whatever of the discretion vested in the city council in so adjudging, and it is unnecessary to say more about this particular grant. Its location, and the manner in which it is approached by the lines of the Collins Park Company, make its use a reasonable necessity, which the city council had the right to declare.

The next separate grant to be considered is that on Loyd street, between Mitchell and Garnett streets. Loyd street is 60 feet wide, 40 feet between curbs. The Railway & Power Company has now one track at this point. Its line runs along Loyd street from a point north of Mitchell street to Garnett street, just opposite to which it runs into Pulliam street, which branches off on the east side of Loyd. The proposed line of the Collins Park Company will come down Mitchell street, and turn into Loyd at Mitchell, and run out Loyd street. The Railway & Power Company's track, as will be seen, leaves Loyd on the east side, and the proposed Collins Park line will enter it on the west side. No reason whatever appears why each company at this point cannot have its own line. No evidence has been introduced and no argument has been made as to situation there sufficient to justify the court in holding that the city could reasonably and properly authorize the condemnation and use of that part of the Railway & Power Company's track. Each of the companies can pursue its own side of the street with perfect ease, so far as anything submitted in the case shows. The Collins Park Company can enter this street at its west side, and pursue its course along the west side to Garnett, from which point it goes on a street on which the Railway & Power Company has no track. The Railway & Power Company's track comes into Loyd from Pulliam on the east side, and goes along Loyd street without interfering with, touching, or crossing the track of the Collins Park Company at any point. A suggestion to this effect came up during the argument of one of the counsel for the complainants, and, as it involved the removal of the track of the Railway & Power Company from the center of the street to the east side, inquiry was made if the Railway & Power Company would move its track voluntarily; and the response of counsel was that, while he was not fully authorized to speak for the company, he thought it would. It will be assumed that the Railway & Power Company will move its track at the proper time

so' as to make room for the track of the Collins Park Company on these two blocks, and application for further order of the court can be made, if this assumption is erroneous.

The next portion of the lines of the Railway & Power Company, the condemnation of which is authorized, is on Peachtree street from Pine street to a point nearly opposite Forest avenue. It is unnecessary to determine the necessity for the use of this part of the Railway & Power 'Company's track at present, except in one respect. There has been considerable discussion as to whether any other route was practicable, to enable the Collins Park Company to construct what is called its "Juniper Street Line," but it is immaterial, in the view taken of this particular grant. The right to condemn this portion of the Railway & Power Company's tracks is, as are the other grants, based expressly on the reservation made by the city in the grant to the Consolidated Company. It is earnestly contended by counsel for the Collins Park Company that the action of the city council in adjudging the necessity for the use of the tracks of the Railway & Power Company by the Collins Park Company necessarily carried with it and embraced in it a determination of all that was required in the charter of the Collins Park 'Company, in order to authorize condemnation. The right is not given by the city because of the necessities stated in the charter of the Collins Park Company, but because, as they determine, it is necessary to enter the central portion of the city. It may be that if the city authorities consider, as it seems they did, they can allow the condemnation of the track of the Railway & Power Company in any part of the city, so long as the purpose is to ultimately reach the center of the city, that they would hold the use of the track in question necessary for that purpose, and would not adjudicate it to be necessary under the charter of the Collins Park Company. Certainly, where the property of one person is taken for the use of another in this way, the authority under which the taking is authorized should be strictly pursued. If the city could act by virtue of its contract rights, and at the same time carry with this action its consent to the exercise of rights existing under the charter of the Collins Park Company, the language used by which such general result is obtained should be clear and unmistakable. It is not so here, and therefore the rights that pass by the grant on this portion of Peachtree must be tested and ascertained by the terms of the reservation in the grant to the Consolidated Company. Tested by this, it is perfectly clear that it does not come within the language of the reservation, "to enter the central portion of the city." It is unquestionably several blocks beyond the extreme limits of what can fairly be considered the central portion, of the city, and no right to condemn the track of the Railway & Power Company at that point for the use of another company was, in the most liberal view of it, embraced in this reservation.

As the use of the track of the Railway & Power Company on three blocks only is now taken under the reservation, it is unimportant to determine the extent of the reservation beyond what is conceded by both parties; and it is also unimportant to determine whether or not the use of the track on two blocks of Mitchell street said to have been taken by the Atlanta Railway Company from the Consolidated

Company should be considered in estimating the aggregate number of blocks. The conclusion, therefore, is that as to the track sought to be condemned, and the method of condemning and using it, on Whitehall street, from Mitchell to Alabama, the injunction will be denied. As to the track on Peachtree street from Auburn avenue to a point near Edgewood avenue, as explained in defendant's answer, and the diagram submitted, the injunction will be denied. As to the track on Loyd street from Garnett to Mitchell, the injunction will be granted, provided the Railway & Power Company moves its track, when necessary, to the east side of the street, to allow the use of the west side by the Collins Park Company. In that event the action of the city authorities in condemning the use of this track would be unreasonable, even if the use of this track is necessary to enter the central portion of the city, which is not now determined, and which latter question may be left for future determination in the event further action is necessary. As to the portion of the Railway & Power Company's track on Peachtree street from Pine street to a point near Forest avenue, for the reasons stated the injunction will be granted. A decree may be taken denying an injunction in the respects above indicated, and granting an injunction pendente lite as indicated.