MERCANTILE TRUST & DEPOSIT CO. et al. v. COLLINS PARK & BELT R. CO. et al.

(Circuit Court, N. D. Georgia. September 25, 1900.)

JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—IMPAIRING OBLIGATION OF CONTRACTS—EXTENSION BEYOND SCOPE OF ORIGINAL CONTROVERSY.

Where jurisdiction of a bill to enjoin enforcement of a city ordinance authorizing a street-railroad company to condemn for its use certain parts of the track of another company is taken by the circuit court on the ground that the claimed violation of a previous grant to the latter company involves a federal question arising under the contract clause of the constitution, it does not give it jurisdiction to decide a question arising on a supplemental bill as to the right of condemnation by the former company under its charter, pursuant to which the city pendente lite decided that the streets where the tracks were located were not wide enough for two companies to lay tracks side by side, as the matter involved is beyond the scope of the controversy which gave the court jurisdiction of the case originally.[1]

---

[1] Jurisdiction in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308, and Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

In Equity.

King & Anderson, Goodwin & Hallman, and Payne & Tye, for complainants.

Brandon & Arkwright, King & Spalding, John L. Hopkins & Sons, and Rosser & Carter, for defendants.

NEWMAN, District Judge. The proceeding here instituted is supplementary to the proceedings in the case of Mercantile Trust & Deposit Co. v. Collins Park & Belt R. Co., now pending in this court. By the supplemental bill and certain amendments thereto, it is alleged that since the former decisions in this case (99 Fed. 812, and 101 Fed. 347) the Collins Park & Belt Railroad Company has petitioned the mayor and general council of the city of Atlanta to determine whether Peachtree street, between Currier and Pine streets, is wide enough for its tracks to be laid thereon, in addition to the tracks of the Atlanta Railway & Power Company, already there, and, if the street is not of sufficient width for this purpose, to so adjudge; the purpose being that the Collins Park Company may institute proceedings against the railway and power company for the purpose of obtaining the joint use by the two companies of the tracks at the point named. This application was in accordance with and by virtue of the charter of the Collins Park & Belt Railroad Company. It obtained by act of the legislature of Georgia (Acts 1889, p. 211) the rights formerly granted to the Metropolitan Street-Railroad Company (Acts 1882-83, p. 203). The power so granted, so far as material here, is as follows:

"Said corporation, for the purpose of making a connected line, or for the purpose of crossing any other street railroad with its road, may lay its tracks upon and occupy with its railroad or tracks any street or streets upon which any other street railroad company may have its tracks, or may have the right to lay its tracks at the time: provided, it does not at any one place occupy more than five full city blocks front, contiguous to each other, and if the proper municipal authorities determine that the street or streets so sought to be occupied by the tracks of both roads is not wide enough for both of said roads to have separate tracks and at the same time to leave space enough for the passage of vehicles, then and in that event, said corporation shall have the power and authority to condemn to its use such parts of said other railroad as may be necessary for the purpose of making a connected line, or of crossing any other street railroad with its road, not exceeding in any one place three full city blocks contiguous to each other. Said condemnation shall be made after the decision is made as aforesaid by said municipal authorities, that such condemnation is necessary to the convenience of the city in the exercise of its control over the streets of said city, by pursuing the provisions and mode pointed out in section six of this act; and said track or road so condemned shall be used by each of said roads, each having equal rights thereon; and in maintaining said track or road so used in common, each company using the same shall pay pro rata in proportion to the number of cars run on said track: provided, that the part of said track of any other railroad company, which may be condemned with the consent of said municipal authorities, shall be so used by each of said companies using the same, that neither one shall damage the business of the other, nor delay its cars running upon said track so condemned."

This court had determined by its decree of May 1, 1900, that the railway and power company's tracks at this point did not come within the reservation contained in the grant to the Atlanta Consolidated

Street-Railway Company of May 20, 1891, and had enjoined the Collins Park & Belt Railroad Company from proceeding further towards the condemnation of that part of the railway and power company's tracks under the authority it then had from the city. 101 Fed. 358. The action of the city which was recently invoked by the Collins Park Company was not taken on account of any supposed right existing in it by virtue of the reservation contained in its original grant to the Consolidated Company, but was taken in pursuance of a request to determine whether, under the provisions of the charter of the Collins Park Company, Peachtree street at the point named was "wide enough for both of said roads to have separate tracks, and at the same time leave space enough for the passage of vehicles." By the terms of the charter of the Collins Park Company, it will be seen that this was a duty imposed upon, or at least a power given to, the municipal authorities.

So much of the present situation of the case has been given for the purpose of reaching the first question for consideration at this time. The jurisdiction of the court is challenged at the outset on the ground that no federal question is involved in the matter brought up in this supplemental bill. Jurisdiction in this case was entertained originally because of the existence of a federal question, namely, the alleged impairment of the obligation of the contract between the city and the Consolidated Company. This contract was the grant by the city to the Consolidated Company of the use of certain streets, with the reservation of the right to retake by condemnation as much as five blocks of the track of the company for the use of another company whenever it should be necessary in order to enable such other company to enter the central portion of the city, the contention being (which was sustained) that this was an implied agreement on the part of the city that it would not take more than five blocks of the track of the Consolidated Company. There was a contention as to the meaning of "five blocks" in the grant, but the whole case, as originally made, was based on the fact that a contract existed between the city and the Consolidated Company, and the alleged effort of the city to take more than those five blocks, and to take certain parts of the track of the Consolidated Company for the new company, not necessary to enter the central portion of the city. In the former decision by this court it was stated (101 Fed. 354):

"The city's grant to the Collins Park Company, as has been stated, is based entirely on the reservation in the grant to the Consolidated Company, and the city does not assume to act by virtue of any other power or authority. In the charter of the Collins Park Company the legislature granted to it the rights theretofore granted to the Metropolitan Street Railroad Company, and one of these rights was to condemn, when certain conditions therein specified existed, certain parts of the track of another street railroad company."

Reference is then made to that part of the charter of the Metropolitan Company adopted by the Collins Park charter, and subsequently in the opinion the court says (page 358):

"It is earnestly contended by counsel for the Collins Park Company that the action of the city council in adjudging the necessity for the use of the tracks of the railway and power company by the Collins Park Company necessarily carried with it and embraced in it a determination of all that was

required in the charter of the Collins Park Company in order to authorize condemnation. The right is not given by the city because of the necessities stated in the charter of the Collins Park Company, but because, as they determine, it is necessary to enter the central portion of the city. It may be that if the city authorities consider, as it seems they did, that they can allow the condemnation of the track of the railway and power company in any portion of the city, so long as the purpose is to ultimately reach the center of the city, that they would hold the use of the track in question necessary for that purpose, and would not adjudicate it to be necessary under the charter of the Collins Park Company. Certainly, where the property of one person is taken for the use of another in this way, the authority under which the taking is authorized should be strictly pursued. If the city could act by virtue of its contract rights, and at the same time carry with this action its consent to the exercise of rights existing under the charter of the Collins Park Company, the language used by which such general result is obtained should be clear and unmistakable. It is not so here, and therefore the rights that pass by the grant on this portion of Peachtree must be tested and ascertained by the terms of the reservation in the grant to the Consolidated Company."

Unquestionably, where jurisdiction is taken by the circuit court of a case on the ground that a federal question is involved, it must determine the questions material to the case, and necessary for its determination. This would not justify the court in going into matters not pertinent to and entirely beyond the scope of the controversy which makes the federal question. Everything connected with the grant by the city to the Consolidated Company, and the infringement of the rights obtained under such grant by reason of the action of the city moving itself against the Consolidated Company, might be pertinent to the original litigation, and any such action of the city subsequent to the filing of the original bill would probably be proper subject-matter for a supplemental bill. Every municipality has a twofold character. One is its business or trading character, under which it contracts. The other is its legislative or judicial and discretionary character. In Dill. Mun. Corp. (4th Ed.) § 97, the powers of municipal corporations in this respect are stated in this way:

"Powers are conferred upon municipal corporations for public purposes, and, as their legislative powers cannot be delegated, so they cannot, without legislative authority, expressed or implied, be bargained or bartered away. Such corporations may make authorized contracts, but they have no power. as a party, to make contracts or pass by-laws which shall cede away, control or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties. The cases cited illustrate this salutary principle in a great variety of circumstances, and, for the protection of the citizen, it is of the first importance that it shall be maintained by the courts in its full scope and vigor."

In City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, Mr. Justice Brown states the principle in this way:

"It may be conceded as a general proposition that there is a substantial difference between the acts of a municipality as the agent of the state for the preservation of peace and the protection of persons and property, and its acts as the agent of its citizens for the care and improvement of the public property, and the adaptation of the city for the purposes of residence and business. Questions respecting this distinction have usually arisen in actions against the municipality for the negligence of its officers, in which its liability has been held to turn upon the question whether the duties of such officers were performed in the exercise of public functions, or merely proprietary powers."

When the city of Atlanta made the contract with the Consolidated Company that it would not condemn more than five blocks of its lines for the use of another company, it did not and could not contract that it would not discharge the judicial or quasi judicial duty imposed upon it by an act of the legislature to determine matters pertinent here. It did not say, and could not, that it would not judicially determine, when required or when authorized by the legislature to do so, that certain streets of the city were not wide enough, as a matter of public convenience, for two street-car companies to lay their tracks side by side.

In one of the former opinions in this case (101 Fed. 351) it is said:

"The right to take the track of one company for the use of another must be reserved in the grant, or exist otherwise by contract, or such taking must be the exercise of the state's power of eminent domain, through the legislature of the state. Confessedly, the city has no power of eminent domain with reference to the matters in controversy here. It has no grant from the legislature to condemn the track of one street railway company for the use of another. The only rights it has or can exercise are by reason of the reservation contained in the grant to the Consolidated Company. There is no question of the exercise of the power of eminent domain in connection with the city's direct action in the matter."

It is earnestly contended that the manner in which this recent adjudication of the mayor and general council was made in reference to the width of the street at the point in question was so connected with its permission to use the street as a part of a line as to make the question now raised pertinent to the original litigation. While the original litigation was pending the city had granted to the Collins Park Company the right to the use of this portion of Peachtree street as a part of its line in that direction, and the right to condemn at the point named, because of the necessity for entering the central portion of the city. After this was enjoined, the city, as has been stated, on the petition of the Collins Park Company, made the adjudication as to the width of the street, and the impracticability of two street-car companies using that part of the street separately with their tracks. There was no question about the validity of the original grant of the use of the street, waiving for the moment the question of condemnation of the track of the company already occupying the street. In the former opinion of this court (101 Fed. 356), speaking of the situation on Whitehall street, it is said:

"It is hardly contested that the city could, even in the exercise of its general powers over the streets, require the railway and power company to move its tracks to one side of the street at this point, and allow the new company to build another track."

The city is not moving in the particular matter of condemnation now before the court at all. There is no direct action on its part, in what has recently been done, looking to any entry upon or interference with the tracks of the railway and power company at the point named on Peachtree street. The contract between the city and the Consolidated Company, and the reservation made therein, are not in any way involved. The "municipal authority" simply sits in a judicial capacity, and determines a question imposed upon it by law, and then the Collins Park Company proceeds under and by virtue of its

charter. The city only determines judicially that certain conditions exist. It does not grant any right to condemn. The right of the Collins Park Company to proceed after the city's judicial determination that the condition exists comes directly from the state, through the company's charter. The city not only does not withdraw any right formerly granted, but it does not, in the language of a former opinion in this case, interfere with any right by "a limited construction of the effect of the grant."

My conclusion is that the matter brought up by this supplemental bill, to wit, the right of the Collins Park Company to take the track of the railway and power company under the condemnation proceedings recently instituted, and proceeding entirely under the terms of its charter, is entirely beyond the scope of the controversy which gave this court jurisdiction of the case originally. On account of the citizenship of the parties, there is no jurisdiction in the circuit court unless a federal question is involved. The situation of the pleadings is such that no order will be made at present with reference to the supplemental bill and its amendments, further than to deny, for want of jurisdiction in the court, the prayer for a temporary restraining order.

In view of the conclusion thus reached, it is unnecessary to determine whether or not the parties to the litigation now pending in the state court are substantially the same as the parties to this case, and whether or not, if that be true, the litigation is of such a character as that this court should stay its hand until the determination of the case in the state court. It is also unnecessary to determine the merits of the case, so interestingly discussed by counsel for the respective parties. The application for a temporary restraining order is denied.